289 So.2d 862 (1974)
Milton A. DAVIS, Individually and on Behalf of the minor James J. Davis
v.
TRANSAMERICA INSURANCE COMPANY et al.
No. 6022.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1974.
Wilmer Glauner Hinrichs, New Orleans, for plaintiff-appellant.
Marcel Livaudais, Jr., New Orleans, for defendants-appellees.
Before GULOTTA, SCHOTT and MORIAL, JJ.
SCHOTT, Judge.
Plaintiff has appealed from a judgment in his favor in the amount of $1200 for personal injuries sustained by his son on September 19, 1965, when the boy was five years of age.
The accident occurred when the boy was struck on the head by a wire basket which *863 had been suspended from a tree limb and which fell on him while he was a guest on the premises of his uncle.
The boy sustained a partial avulsion of the frontal scalp, bled profusely and was taken to a hospital where the wound was debrided and repaired by suturing with 10 or 12 sutures. On September 21 he was seen by Dr. Homer Kirgis who found that the wound was healing satisfactorily and removed half of the sutures. He returned to Dr. Kirgis on September 28 when the remainder of the sutures were removed and an infection was found at the site of the injury. He was then hospitalized from September 28 to October 2, during which period the infection was treated and cleared up, and he was seen again by Dr. Kirgis on October 5 and October 12, during which period there was no recurrence of the infection and his progress was satisfactory. On December 16, 1965, the boy was taken to Dr. Kirgis with the complaint that his eyes had become crossed whereupon he was seen by Dr. Robert A. Schimek, Ophthalmologist.
According to his report the parents had just noticed that the boy's eye had started to turn in and until that time had been normal. Sometime thereafter Dr. Schimek found that there was some muscle impairment in the right eye and he diagnosed the boy's condition as esotropia, or a turning in or crossing of the right eye.
Plaintiff's primary contention in this Court is that the trial judge erred in finding that the esotropia was not related to the accident and therefore the award of $1200 was manifestly inadequate. Secondarily, he contends that even if the proof of causation of the esotropia was insufficient the award was still inadequate for the child's remaining injuries.
In connection with the primary contention, plaintiff called the child's parents and some relatives who testified that the child's eye was normal until the accident and that the turning in of the right eye did not appear until thereafter. His only other evidence on the point consisted of the medical reports of Dr. Schimek which contained statements to the effect that the boy did not have the type of muscle imbalance that would be typical of one caused by an injury and that there was no clear cut evidence that the injury directly caused the condition "beyond any question of a doubt." This opinion was later supplemented with the statements that "We cannot be so definite in relating the injury with the double vision that we would call this a probability.
"Our reluctance to call this a probability is in part due to the long time between the injury and the onset of the double vision and esotropia ..."
The plaintiff has the burden of proving each and every element of damages for which he seeks compensation. He must prove such by a preponderence of evidence, that is, the proof must be of such quality that the fact sought to be proved is more likely than not. A reading of Dr. Schimek's reports convinces us that plaintiff did not bear the required burden of proof, and on that basis alone is not entitled to recovery of damages for the esotropia. In addition, defendant offered the report of Dr. Robert Azar, Ophthalmologist, who said that there is no reasonable basis for attributing the condition of the boy's eye when he examined him on January 5, 1967, to the trauma which occurred in September, 1965. He concluded, "I can see no possible relationship between the alleged blow to the head and this type of muscular anomaly." Considering all of this evidence, we cannot say that the trial judge committed error in his finding that the esotropia was not the result of the accident and therefore allowing no recovery for this item of damages.
As to the secondary contention of plaintiff, we find that it has merit in that the judgment of the trial court is grossly and manifestly inadequate notwithstanding the fact that the boy's esotropia was not caused by the accident.
*864 The lay witnesses testified that this boy complained of pain and soreness in his eyes, and his parents were prompted to return him to Dr. Kirgis for examination in August, 1966. Reporting on this examination in December, 1966, Dr. Kirgis stated:
"Relative to a `bald area in the prefrontal area' which you mentioned, I do not believe there is any significant scarring or loss of more than a few hairs. In fact, I have no record of this in my clinic notes."
However, at the trial of the case held on June 17, 1970, almost five years after the date of this accident, the trial judge dictated into the record the following description of the boy's scar which was not objected to or challenged by counsel:
"Let the record reflect that the court has looked at a scar which appears within the small bald area of the forward portion of Jimmy Davis' head somewhat to the left of the middle of his head and somewhat at an angle and that the scar appears to be about ... but measures approximately 21/8nearly 2¼ inches and that scar .... is indented."
Photographs taken of the child in about January, 1966, show the bald spot on the boy's head as noted by the trial judge.
The boy himself was offered in evidence with the stipulation: "James Davis would appear at the hearing before the Court of Appeal for visual observation of any scars or disfigurement he might have." Pursuant thereto we have viewed the boy and find, now over eight years and four months after the accident, that there is a bald, round shaped area above and commencing at the front hairline around the middle of his head measuring about two inches in diameter and containing a still visible scar. From this we have concluded that the condition is permanent and, considering changing hair styles and the natural tendency of hair to recede as one ages, it shall continue to be a significant cosmetic defect.
The parties stipulated that the medical expenses amounted to $613.64 with $500 of them paid by the medical payments portion of the defendant's policy. Thus, it seems that the trial judge's award of $1200 included the $113.64, so that the child was awarded only $1086.36 for general damages, including pain and suffering and cosmetic defect. An award of $3000 would more reasonably compensate him for his injury.
Accordingly, the judgment appealed from is amended so that there is judgment in favor of Milton A. Davis, individually and on behalf of the minor, James J. Davis, in the full sum of $3113.64, with legal interest from date of judicial demand until paid, and for all costs of these proceedings, defendant to pay all costs of this appeal.
Amended and affirmed.