408 So.2d 930 (1981)
OUACHITA EQUIPMENT RENTAL COMPANY, INC., Plaintiff-Appellee,
v.
Tommy TRAINER, et al., Defendants-Appellants.
No. 14709.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1981.
*931 Pipes & Pipes by William F. Pipes, Jr., Monroe, for plaintiff-appellee.
Kostelka, Swearingen & Street by C. Daniel Street, Monroe, for defendant-appellant Trainer.
Greenlee & Hurd by Edward R. Greenlee, Monroe, for defendant Brown.
Before PRICE, MARVIN and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
This is a suit on a truck lease. One of the defendants, Tommy Trainer, appeals from a judgment awarding damages to the lessor for breach of the lease and rejecting defendants' reconventional demand. The other defendant, Jerry Brown, did not appeal.
Trainer is the owner of a service station in Monroe, La. He also owns and drives a truck and trailer rig. Brown took a training course to become a truck driver shortly before this controversy developed, and at times he had helped Trainer drive his truck. The defendants wanted to go into business together by acquiring a truck for Brown to drive. Brown was to receive twenty percent of the gross income from the operation of the truck as compensation for his services as driver. Defendants planned to split the net income from operation of the truck equally between them.
The defendants went to Rivers' Ford, Inc. in Monroe to look for a truck. There they first contacted George Bennett, a salesman. Since Bennett was not experienced with truck sales he referred defendants to O. J. Whittington, the Sales Manager of Rivers' Truck Department.
Defendants, particularly Trainer, due to his experience as a trucker, wanted certain features on their truck. It was Trainer who primarily handled the negotiation of the lease for the defendants. They wanted a certain size tires, a Ranger 13 speed transmission, *932 a Cummins engine and an air ride cab on the truck. The tires, transmission and engine were available on most brands of trucks, but the air ride cab was an exclusive Ford feature. The Ford air ride cab produces an exceptionally smooth ride which makes it highly desirable for use in long haul trucking. The air ride cab is apparently vastly superior to air ride seats which are offered by almost all manufacturers. Rivers' did not have a truck on its lot equipped as defendants desired, so Whittington began trying to locate one.
When Whittington got a suitable truck the defendants were to lease it from Ouachita Equipment Rental Company, Inc. (sometimes hereinafter called OER), the plaintiff. The record shows that OER and Rivers' Ford are very closely related corporations. OER and Rivers' have some common owners and at one time were located in the same building.
The plan was for Whittington to locate a suitably equipped truck at another Ford dealer. Rivers' would then buy the truck and sell it to OER which would lease it to defendants. The defendants then planned to lease the truck to Melton Truck Lines of Shreveport and operate it for them.
In the weeks following the defendants' visit to Rivers' Ford, Whittington was able to locate several trucks. However, they were either unsuitable or unavailable by the time Whittington could contact Trainer, who was often on the road. Finally, Whittington located a truck in Greenville, Miss. that appeared suitable and contacted Trainer.
Rivers' refused to get the truck from the Greenville dealer before Trainer and Brown signed the lease with OER. Thus, the defendants were required to sign the lease while the truck was still in Greenville. After Trainer and Brown signed, Rivers' dispatched a driver to Greenville to bring the truck to Monroe.
Once the truck was brought to Monroe the defendants examined it. They noted several minor defects including a damaged shock absorber, a missing radio speaker, a missing mattress in the sleeper and damage to the exhaust stack. Trainer also saw a piece of equipment underneath the cab that he took to be the air ride cab suspension. Rivers' corrected the problems with the truck and made arrangements to have Adair's install a fifth wheel on the truck.
Trainer drove the truck the twelve to fifteen blocks from Rivers' to Adair's. Trainer left the truck there for the work to be done.
The following Monday morning the defendants picked up the truck from Adair's. They then took the truck to Shreveport to make their arrangements with Melton. Brown drove the truck and Trainer drove a second vehicle. On the trip to Shreveport the truck rode very roughly.
Upon arrival in Shreveport, the defendants drove to the Melton terminal to have the truck inspected by Melton and to sign the necessary contract with Melton. While they waited for the truck to be inspected Trainer regaled the Melton inspectors with his description of the virtues of the new truck, especially its air ride cab. Soon after beginning their inspection the inspectors noticed that the truck was not equipped with an air ride cab, and they so informed Trainer.
Once Trainer recovered from his initial surprise at this information he told Brown and together they went into the terminal and Trainer called Whittington. Brown listened to the conversation on an extension phone. The two versions of the conversation differ slightly.
According to defendants, once Whittington was told the truck was not equipped with an air ride cab he instructed them to return it. Whittington claims that Trainer said they were returning the truck and he merely replied that they could do so as far as he was concerned. Following the conversation the defendants returned to Monroe, left the truck with Rivers' and have not had it since.
Because the defendants had the truck for only one day they refused to make any of the payments due under the lease and OER brought this action for the amount due *933 under the liquidated damages provisions of the lease, interest and attorney's fees. Trainer and Brown filed separate answers contending that the lease was invalid on account of fraud and/or error and both reconvened for damages for lost profits. After a trial on the merits the district court rendered judgment in favor of OER on the main demand and rejected the reconventional demands against it. Trainer appealed. We amend and affirm.
Trainer makes four assignments of error. First, that it was error to find that the parties had entered into a valid lease. Second, that the trial judge erred in finding that the lease was not vitiated by fraudulent misrepresentations or error as to the principle motive of the contract. Third, that the trial judge erred by awarding damages that are unreasonable and unconscionable in amount and not supported by law or evidence. Fourth, that it was error to reject Trainer's reconventional demand. We address only the second and fourth assignments of error.
The second assignment addresses the trial judge's failure to find the lease vitiated by fraud or error as to the principal cause of the contract.
Consent to a contract can be invalid if produced by an error of fact. LSA-C.C. arts. 1819 and 1820. There is an error of fact when one is ignorant of a fact which exists or believes in the existence of a fact which actually does not exist. LSA-C.C. art. 1821.
Article 1825 of the Civil Code provides:
"The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive and means that consideration without which the contract would not have been made." (emphasis in original)
Civil Code Article 1826 provides:
"No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it."
Error as to the thing which is the subject of a contract invalidates the contract if the error is of the substance or some substantial quality of the thing. LSA-C.C. art. 1842. However, even error as to other qualities of the thing invalidate the contract when they were the principal cause or motive of the contract. LSA-C.C. art. 1845.
Thus, a contract may be invalidated for unilateral error of fact as to the motive when the other party knew or should have known what the motive of the contract was. Scoggin v. Bagley, 368 So.2d 763 (La.App. 2d Cir. 1979); Deutschmann v. Standard Fur Company, Inc., 331 So.2d 219 (La.App. 4th Cir. 1976); Jefferson Truck Equipment Co. v. Guarisco Motor Co., 250 So.2d 211 (La.App. 1st Cir. 1971). For Trainer's defense of error to prevail it was necessary for him to prove three facts: his motive; that there was error as to that motive; and that OER knew or should have known of his motive.
That the trial court did not sustain this defense implicitly means that it found at least one of those facts not to have been proved. The trial judge in his written reasons for judgment made the following finding of fact:
"The Court cannot find from the evidence presented that there is sufficient justification for the position of the defendants that this was not the truck which they ordered and therefore finds that the plaintiff is entitled to judgment as prayed for... The Court again states that it does not feel that the defendant met its special defenses in ascertaining that the truck delivered was not the one which was the subject of pre-contractural agreement."
The district court here makes a finding of fact that appellant did not order a truck with an air ride cab and that the truck delivered without the air ride cab was the truck ordered by appellant.
This factual determination, which was the basis for the trial judge's rejection of appellants' defense of error, must be evaluated *934 based upon a review of the evidence to determine if under the rule of Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), it is clearly wrong, or if it is supported by substantial evidence, and for that reason cannot be disturbed on appeal.
The evidence in the record clearly shows that the motive of the defendants in leasing a Ford was to get a truck with an air ride cab. Trainer testified:
".. I told him what I wanted, and I specified from day one that I wanted an air suspension cab. That was my whole purpose in buying something that had FORD on it. I can buy a 13 speed Ranger or 350 Cummins in any kind of truck, but I specified that I wanted the air suspension .. air ride suspension on the cab, and that's why I wanted a Ford." (emphasis in original. Tr. p. 130).
The same theme shown in the above excerpt appears repeatedly throughout the testimony of Trainer and Brown. They specified that the truck have an air ride cab, they wanted an air ride cab, and that was the only reason they were getting a Ford.
Bennett testified that Trainer had told him that they wanted an air ride cab the first time and every other time they talked about the truck. Bennett testified that when the truck arrived from Greenville all assumed it was equipped with an air ride cab:
"I think we all assumed that it was there really." (Tr. p. 124)
Whittington admitted that Trainer had repeatedly requested the air ride cab feature in his conversations with him about getting a truck. Whittington admitted that he had placed the air ride cab upon the list of requirements for the truck that appellant had specified. Whittington further admitted that he had never specifically advised appellant that the truck obtained from Greenville and leased to appellant did not have the air ride cab:
"I did not ... did not tell him it did not have air ride but I went over the air ride seats and the other items that this truck did have." (Tr. p. 47)
Further, as soon as it was learned that the truck did not have an air ride cab the defendants called long distance to complain and immediately returned the truck.
The evidence in the record so strongly shows that the defendants' motive for leasing a Ford was to get an air ride cab that the factual determination to the contrary by the district judge is clearly wrong.
There is no doubt from the record that the truck was not equipped with an air ride cab. Thus, there was clearly an error of fact as to the motive, the defendants believed the truck they leased had an air ride cab when it did not.
The determinative question then is: did OER know or should it have known that the defendants' motive for leasing a Ford was to get a truck with an air ride cab?
We note that the record shows that the defendants had relatively little contact with employees of OER. Ms. Diane Rowsey, an OER employee, took the lease to Trainer's service station where defendants signed it so that Rivers' would get the truck from the dealer in Greenville. A review of the description of the truck contained in the lease establishes that it contains no detailed description of the truck other than:
"1978 Ford CLT9000 with sliding fifth wheel No. X98LVCG5292."
The description of the truck in the lease would not convey to appellant that it was not equipped with an air ride cab. The record contains a copy of a letter addressed to defendants from Walter Hastings, General Manager of OER, authorizing defendants to lease the truck to Melton Truck Lines, Inc., which was written before defendants discovered the truck did not have the air ride cab, but almost all of the contact between OER and defendants appears to have occurred after defendants returned the truck. It appears that no one who was directly employed by OER knew the defendants' motive at the time the lease was signed. However, due to Whittington's relationship with OER his knowledge of appellant's motive in leasing the truck must be imputed to OER.
*935 An agency may be established by a party's conduct even though he did not intend to create it. Busby v. Walker, 84 So.2d 304 (La.App. 2d Cir. 1955) Cason v. Cecil, 194 La. 41, 193 So. 362 (1939). The knowledge of the agent is imputed to the principal even if the agent neglects to specifically convey that information to the principal. Marpco, Inc. v. South States Pipe & Supply, 377 So.2d 525 (La.App. 3d Cir. 1979); Bank of Louisiana v. Argonaut Insurance Company, 248 So.2d 349 (La.App. 4th Cir. 1971).
Hastings testified that Whittington worked closely with OER in its leasing operations. It was Whittington who negotiated the lease with Trainer and Brown. Whittington took the OER credit application from the defendants. Whittington assisted OER in its leasing business. OER knew and took advantage of that assistance. That conduct by OER established an implied agency. Thus, what Whittington knew or should have known as to the appellant's motive must be attributed to OER.
The record shows that the air ride cab was an exclusive Ford feature designed to give a smoother ride. Defendants specified that their truck have an air ride cab the first time they talked to Whittington and Bennett, and Trainer repeatedly mentioned their desire for that feature in his later conversations with them.
Whittington had a list of features defendants wanted on their truck, and that list included an air ride cab. The other requested features mentioned in the record were certain tires, a Ranger 13 speed transmission and a Cummins diesel engine. Those features would have been available on many other brands of trucks but an air ride cab was an exclusive Ford feature.
Under the circumstances Whittington knew or should have known that the defendants regarded it as essential that the truck be equipped with an air ride cab. The factual finding of the trial judge which necessarily indicated Whittington and OER were unaware of this fact was manifestly erroneous.
The defendants' motive was to lease a truck with an air ride cab. OER, through Whittington, should have known that was defendants' motive. The defendants were in error when they leased the truck because they believed it was equipped with an air ride cab. Thus, there was error as to the defendants' motive, and, therefore, the lease is invalid.
A similar conclusion was reached by this court in Ouachita Air Conditioning, Inc. v. Pierce, 270 So.2d 595 (La.App. 2d Cir. 1972). There the parties had a contract for the installation of an air conditioning condensing unit. The buyer's home was equipped with a York system. When it failed he contacted plaintiff through a York serviceman and a York distributor. The parties agreed that plaintiff would install a new condensing unit. Neither party mentioned brand names but the buyer expected and wanted a York unit since the rest of his system was York. The plaintiff installed an Amana unit. Once the unit was installed the buyer refused to pay for it and the seller brought suit.
The court found that the buyer's principal cause was to have a York unit rather than any other manufacturer's unit installed. Plaintiff should have been aware of that under the facts, the court concluded, and since a York unit was not installed the contract was found invalid on ground of error.
In Gour v. Daray Motor Co., Inc., 373 So.2d 571 (La.App. 3d Cir. 1979), the court considered a case where the plaintiff had purchased an Oldsmobile which, unknown to him, was equipped with a Chevrolet engine. Plaintiff contended that his principal cause was to get an Oldsmobile equipped with an Oldsmobile engine. The court agreed on the ground that when one shops for an Oldsmobile it is reasonable to believe that he wants it equipped with an Oldsmobile engine rather than some other brand engine. The court found it should be presumed that the defendant knew of that motive because of the way the substitution of engines was concealed. The contract was found to be invalid.
*936 These cases show that even though the thing delivered is very near what was requested by the party if it differed in the aspect which caused the party to enter the contract then there is error as to the motive or principal cause. Just as it is not enough that a party gets an Amana unit when he wanted a York unit or Chevrolet engine when he wanted an Oldsmobile engine, it is not sufficient that these parties got a truck when they wanted a truck with an air ride cab.
This case is also similar to Gour in that in both cases the difference between the thing desired and the thing delivered was not set out to the party. In Gour the court noted that General Motors carefully avoided mentioning the substitution of engines. In fact, it placed on top of the Chevrolet engine an air filter cover that made it appear to be an Oldsmobile engine.
Here Whittington never mentioned that this truck was not equipped with an air ride cab. However, he did state that it had air ride seats which could have easily misled defendants into believing the truck was properly equipped.
Appellant testified that he only became familiar with the air ride cab in a truck by once taking a ride in a truck equipped with the air ride cab. He stated the truck rode much smoother than any other truck in which he had ever ridden and it was for this reason that he wanted a truck equipped with an air ride cab. Appellant was unaware of how an air ride cab would look or of any particular observation which he could make to determine if a truck was equipped with an air ride cab. He stated that his inspection of the truck at the time he accepted delivery of it did not reveal to him that the truck was not equipped with an air ride cab. There is substantial evidence in the record to the effect that unless you know what you are looking for that a normal observation of a truck would not reveal to you whether or not the truck was equipped with an air ride cab. We find it entirely reasonable that appellant was unaware that the truck was not equipped with an air ride cab following his inspection of the truck and acceptance of the delivery of it.
The two supreme court decisions relied upon by OER in its brief, Stack v. Irwin, 246 La. 777, 167 So.2d 363 (1964), and Cryer v. M & M Manufacturing Company, Inc., 273 So.2d 818 (La.1973), are not contrary to any of the authorities hereinabove cited as they both recognized that error as to principal cause can form the basis for invalidating a contract.
Our decision on assignment two makes it unnecessary for us to consider assignments one and three. We now turn to assignment number four which goes to the district court's failure to award damages for the lost profits claimed by Trainer in his reconventional demand. We conclude that demand was properly rejected.
The burden is on the party claiming damages to prove each and every element of them by a preponderance of the evidence. Roncensky v. Smith, 390 So.2d 1377 (La.App. 3d Cir. 1980); Davis v. Transamerica Insurance Company, 289 So.2d 862 (La. App. 4th Cir. 1974).
The evidence as to lost profits is found only in the testimony of Trainer. He estimates an average month's gross income and then estimates certain expenses which would be deducted to arrive at the lost profit.
The estimate of gross income is unsupported by any underlying data. There is no showing that the business was available to produce the income. Further, there is some evidence in the record that shortly after the truck was returned there was a strike in the trucking industry.
The evidence in the record is insufficient to prove that there would have been any profit from the operation of the truck. Assignment four is without merit.
Defendant Brown did not appeal therefore the judgment as to him is not before us. The judgment of the district court is reversed insofar as it awards damages, interest, attorney's fees and costs against Tommy Trainer, and it is amended to reject OER's demands against Tommy Trainer.
*937 As AMENDED, the judgment is AFFIRMED. All costs of this appeal are assessed against appellee, Ouachita Equipment Rental Company, Inc.