447 So.2d 551 (1984)
Robert E. JEANSONNE
v.
LEON PICKARD CHEVROLET, et al.
No. 83 CA 0366.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
*552 Walter L. Smith, III, Baton Rouge, for plaintiff-appellant Robert E. Jeansonne.
Michael Clegg, Baton Rouge, for defendant-third party plaintiff-appellee Leon Pickard Chevrolet.
Wendell Clark, Baton Rouge, for defendant-third party defendant-appellee General Motors Corp.
Before COVINGTON, COLE and SAVOIE, JJ.
COLE, Judge.
In this case plaintiff seeks a rescission of the sale of a used truck. The facts giving rise to the litigation are as follows. On September 10, 1980, Robert Jeansonne purchased a used 1980 Chevrolet diesel pick-up truck from Leon Pickard Chevrolet. He paid $7,000 cash for the truck, plus tax and license of $362. The truck had 12,400 miles on it, which would normally mean the warranty had expired. However, the salesman, Calvin Daigle, informed Mr. Jeansonne the truck was covered by an extended warranty which was valid for 36 months or 50,000 miles. Mr. Jeansonne was given two pamphlets which explained the conditions of the extended warranty.
After experiencing much difficulty with the truck Mr. Jeansonne filed suit against Leon Pickard and General Motors Corporation for a rescission of the sale and damages, or alternatively, for a reduction of the purchase price. Pickard Chevrolet filed a third party demand against GMC.
At trial testimony was conflicting as to the nature and frequency of the repairs. Plaintiff contended the truck stalled and would not start again the day he purchased it and many times thereafter. He said each time it was towed to Pickard Chevrolet and repaired at no charge. On the other hand, Leon Pickard, Jr. testified the Pickard Chevrolet records showed the truck had been brought in for repairs only twice: once immediately after Mr. Jeansonne purchased it and once in March of 1981 when the transmission failed.
Testimony concerning other problems with the truck was not disputed. In late November or early December of 1980 Jeansonne brought the truck to Pickard Chevrolet because it had been running so poorly. Pickard sent the truck to Womack Brothers, *553 a repair shop which specialized in diesel engines. Womack Brothers performed a rather extensive overhaul and charged $1,646.71 for the work. Jeansonne did not pay this bill and testified he assumed the work was covered under warranty and would therefore be paid by Pickard Chevrolet.
In February of 1981 the truck again quit running and Jeansonne had it towed to Womack Brothers. They repaired a relay switch and he paid $108.22 for the work.
In early March the transmission failed. The truck was towed to Pickard Chevrolet and Mr. Jeansonne was later informed he would have to pay for the transmission repair. A meeting was held and attended by Jeansonne, Calvin Daigle (the salesman), Leon Pickard, Sr., Leon Pickard, Jr. and Roy LeFleur of Womack Brothers. The men discussed the bill due Womack Brothers as well as the transmission problem. Mr. Jeansonne was informed the extended warranty did not apply to him because it was limited to the initial owner of the truck. Calvin Daigle admitted he had mistakenly told Mr. Jeansonne the extended warranty was valid. At this point Pickard Chevrolet apparently refused to pay the Womack Brothers' bill and refused to repair the transmission unless Jeansonne agreed to pay for it. Jeansonne left the truck at Pickard Chevrolet and filed this suit.
After considering the above testimony, the court found Pickard Chevrolet was not aware of a defect in the engine at the time of the sale and had sold the vehicle in good faith. (During trial defendant and third party defendant, GMC, had been granted a directed verdict.) The court noted the invoice from Womack Brothers for $1,646.71 was made out to Leon Pickard (rather than to Mr. Jeansonne) and awarded Jeansonne this amount. The court concluded Mr. Jeansonne had not proved a defect existed at the time of sale and therefore was not entitled to a recission of the sale or a reduction of the purchase price.[1] Jeansonne then filed this appeal.
Although we do not take issue with the trial court's conclusion that plaintiff failed to prove the engine was defective on the date of the sale, we reverse the judgment of the court. We do so because we find plaintiff is entitled to have the sale rescinded, not on the basis of redhibition, but on the basis of there having been an error as to the principal cause of the contract.
The Louisiana Civil Code recognizes that in order to have a valid contract there must be consent by the parties. Art. 1779. Error as to fact can vitiate this consent. Art. 1819. There is an error as to fact when one is ignorant of a fact which exists or believes in the existence of a fact which does not exist. Art. 1821. It is not every error of fact that will invalidate a contract. Only those concerning a principal cause for making the contract, (either as to the motive for making the contract, as to the person with whom it is made, or as to the subject matter of the contract) will invalidate it. Art. 1823. An error as to the cause of a contract must relate to the principal cause, which is defined as "... the motive, and means that consideration without which the contract would not have been made." Art. 1825. Article 1826 elaborates on this idea:
"No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it."
An error as to the thing which is the subject matter of the contract invalidates it when the error bears on "... the substance or some substantial quality of the thing." Art. 1842. The error may be as to the substantial quality of the object (art. 1844), *554 or on some other quality which was the principal cause of making the contract. Art. 1845.
Appellant argues this case comes within art. 1845. He contends the extended warranty was the principal cause of making the contract in that he would not have purchased the truck had he known there was no warranty.
In Gour v. Daray Motor Co. Inc., 373 So.2d 571 (La.App. 3d Cir.1979), writ granted 376 So.2d 1270 (La.1979), writ dismissed 377 So.2d 1033 (La.1979) the plaintiff purchased an Oldsmobile and later discovered it was equipped with a Chevrolet engine. Although the court ultimately based its decision to rescind on the consumer protection laws (La.R.S. 51:1401 et seq.) it found ample grounds for rescission based on error as to a principal cause, under art. 1845. The court noted that under art. 1826, when the error relates to motive, in order to invalidate the contract it must be shown that the other party was apprised of the principal cause of the agreement or should have known it from the nature of the transaction.
Based on the analysis put forth by the Gour court we ask two questions. One, would the plaintiff have purchased the truck had he known there was no warranty? Two, can it be presumed the seller knew of that fact?
Plaintiff testified unequivocally at trial he would not have purchased the truck if he had known there was no warranty. The following testimony was elicited on cross-examination:
"Q. And did that assertion[[2]] by Mr. Daigle influence you in whether or not you bought the truck?
A. To an extent, yes, sir.
Q. To an extent. Well, would you have bought the truck if you hadn't have thought you had an extended warranty?
A. No, sir, because it already had over 12,000 miles on it.
Q. In other words, you knew that you couldn't look for any repairs to be made under the original warranty
A. Yes, sir.
Q. ____when you bought it? And you thought if you had the thirty-six month or 50,000 mile extended warranty you could still get warranty work done?
A. Yes, sir."
Our remaining inquiry then, is whether or not it can be presumed the seller knew of the fact. We conclude the seller knew or should have known that the existence of the warranty was extremely important to a potential buyer. At the time of this sale, the use of diesel engines in domestic cars and small trucks was a rather innovative, untested practice. This fact made it quite important to a purchaser to have some sort of warranty in case of engine trouble. Since at the date of sale the truck was no longer covered by the standard warranty, the extended warranty (which would be valid for the next 37,600 miles or 27 months[3]) was obviously an attractive feature to a potential buyer. We have no difficulty in concluding that Mr. Daigle knew or should have known that a reasonable buyer such as Mr. Jeansonne would not have paid $7,000 for a diesel truck without any warranty whatsoever.
Two other cases have dealt with similar facts. In Ouachita Air Conditioning, Inc. v. Pierce, 270 So.2d 595 (La.App. 2d Cir.1972) a homeowner contracted for the installation of an air conditioning unit. The existing unit was a York brand and the air conditioning contractor was listed as a York dealer. After the unit was installed the buyer discovered the unit was an Amana and refused to pay for it. The court found the buyer's principal cause was to purchase a York unit and rescinded the contract due to this error.
*555 In Ouachita Equipment Rental Co. v. Trainer, 408 So.2d 930 (La.App. 2d Cir. 1981), the plaintiff intended to lease a tractor-trailer rig with an "air-ride" cab. When he discovered the truck did not have such a feature he returned it to the lessor and refused to honor the lease agreement. The lessor sued. The court concluded the lessor was aware of the fact that the lessee's motive was to obtain a truck with an air-ride cab, therefore the contract was invalid due to an error as to the principal cause. The court discussed the Ouachita Air Conditioning case and the Gour case and commented on page 936 as follows:
"These cases show that even though the thing delivered is very near what was requested by the party if it differed in the aspect which caused the party to enter the contract then there is error as to the motive or principal cause. Just as it was not enough that a party gets an Amana unit when he wanted a York unit or Chevrolet engine when he wanted an Oldsmobile engine, it is not sufficient that these parties got a truck when they wanted a truck with an air ride cab."
In the present case it is not enough that Mr. Jeansonne got a diesel pick-up truck (with no warranty) when he intended to purchase a diesel pick-up truck with a warranty valid for the next 38,000 miles. We therefore conclude that the sale was invalid due to an error as to principal cause and plaintiff is entitled to recover the purchase price, plus tax and license from Pickard Chevrolet. However, defendants are entitled to a credit for the 6 months and 10,000 miles of use enjoyed by Mr. Jeansonne. The vendor's right to a credit was discussed in Nugent v. Stanley, 336 So.2d 1058 (La.App. 3d Cir.1976) at page 1062 as follows:
"When a sale is rescinded the parties are returned as nearly as possible to the situation as it existed prior to the sale. The vendee returns the property to the vendor and the vendor returns the purchase price subject to whatever adjustments are necessary for his use of the property during the period he possessed same."
In Gour, supra, the appellate court concluded the seller was entitled to a credit of eight cents a mile. Based upon that court's estimate of the appropriate credit for a vehicle used in 1977 and 1978, we find a credit of ten cents a mile appropriate for the truck in this case, which was used in 1980 and 1981. Since Mr. Jeansonne drove the truck approximately 10,000 miles Pickard Chevrolet is entitled to a credit of $1,000.
Since the object of a rescission is to annul the sale and place the parties in the same position as if there had been no sale, we must consider Mr. Jeansonne's claim of $108.22 he paid Womack Brothers for the repair of a switch in February of 1981. If this expense had occurred many months before the truck quit running we would probably conclude it was simply a cost of maintenance which should be borne by Mr. Jeansonne. However, since this repair was performed only a few weeks before the truck's transmission failed, we do not feel Mr. Jeansonne received any benefit from this work and therefore he should be reimbursed for this expense.
Pickard Chevrolet contends Jeansonne should be estopped from complaining of the lack of warranty because he signed a "disclaimer of warranty" at the time of the sale. We disagree. This "disclaimer" has nothing to do with the represented manufacturer's extended warranty, the absence of which, as above discussed, gives rise to invalidation of the sales contract based on error as to cause. And, even if we were to assume this disclaimer is relevant, it is well settled that in order for a waiver of warranty to be effective, three requirements must be met. First, the waiver must be written in clear and unambiguous terms. Second, the waiver must be contained in the sale and chattel mortgage document. Third, the waiver must either be brought to the attention of the buyer or explained to him. See Prince v. Paretti Pontiac Company, Inc., 281 So.2d 112 (La.1973), rehearing denied 1973; General Motors Acceptance Corp. v. Johnson, 426 So.2d 691 (La. *556 App. 1st Cir.1982), writ denied 433 So.2d 151 (La.1983). The third requirement is not met in the present case.
The bill of sale, signed by plaintiff, was introduced into evidence. It contained a "disclaimer of warranties" which had a space for a notary's signature. (However, the statement was not notarized.) Contrary to the dealer's contention, Jeansonne did not sign the disclaimer. His signature appears above the disclaimer, is affixed in a different context, and the form itself does not contemplate a signatory acknowledgment to the disclaimer. When asked if he read the bill of sale when he signed it, Mr. Jeansonne testified, "I doubt it, no, sir." No evidence was offered showing anyone had explained the disclaimer to him or otherwise called it to his attention.
This issue was discussed in General Motors Acceptance Corp. v. Johnson, supra, at page 695:
"The act of sale with mortgage does not feature a written, signed acknowledgment that the debtor has read and understood his waiver or warranty, nor do the affidavits on record indicate that the waiver provision was demonstrated or explained to Johnson. Thus, the signed waiver in the act of sale does not sustain summary judgment in favor of GMAC."
Therefore, even if we were to consider this a relevant issue, plaintiff is not estopped to complain of the lack of warranty simply because he signed a sales form containing language purporting to be a disclaimer.
Pickard Chevrolet argues further that Mr. Jeansonne was informed of the lack of the manufacturer's extended warranty in the two pamphlets given to him by the salesman at the time of the sale. This argument is self-defeating. The two pamphlets, entitled "Your GM Continuous Protection Plan Agreement" and "Facts On How You Can Protect Yourself Against Major Repair BillsPlus !for 36 Months/50,000 Miles" do in fact each contain a statement that the extended warranty is not valid for anyone but the original owner of the vehicle. However, the gist of Pickard's argument is that even though the salesman informed Mr. Jeansonne the truck was covered by the extended warranty, and even though the salesman presented him with two pamphlets explaining the warranty, Mr. Jeansonne should not have relied on these actions but should have read every word of the pamphlets and should have learned therein that the warranty was inapplicable to him. We find this reasoning convoluted and conclude that because of the salesman's representations to him and because he was given two pamphlets concerning the warranty, Mr. Jeansonne was entirely reasonable in believing the truck he purchased was covered by the warranty. The proven object of his purchase was a truck with an extended warranty. This was represented to him, he thought he was buying it, but he did not receive it.
For these reasons we hereby order the sale of the 1980 Chevrolet diesel pick-up truck rescinded. Leon Pickard Chevrolet shall return to appellant the purchase price of $7,000, plus tax and license of $362; shall pay to appellant the additional sum of $108.22 for the minor repairs made by Womack Brothers; a total of $7,470.22. Because of Mr. Jeansonne's use of the truck for a six month period and for approximately 10,000 miles, Leon Pickard is entitled to a credit of $1,000.[4]

DECREE
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Robert E. Jeansonne, and against Leon Pickard Chevrolet, Inc., for the sum of $6,470.22, plus legal interest thereon from date of judgment, until paid; and that there be further judgment ordering Robert E. Jeansonne to relinquish possession of the vehicle to Leon Pickard *557 Chevrolet, Inc. and to execute in its favor all necessary title documents.
Leon Pickard Chevrolet, Inc. is to pay all costs of court, including those assessed on appeal.
REVERSED AND RENDERED.
SAVOIE, J., concurs in the reversal but would find a breach of contract for failure to provide service under the warranty and would remand to the trial court for a determination of damages for breach of contract.
NOTES
[1] Since the trial court found the plaintiff was not entitled to a rescission of the sale or a reduction of the purchase price, we are not certain of the basis for allowing the recovery of $1,646.71. However, we need not concern ourselves with this issue because Pickard Chevrolet did not file an appeal or an answer and therefore is not entitled to have the judgment modified. See Code Civ.P. art. 2133.
[2] Counsel is referring to an assertion by Mr. Daigle that the truck was under an extended warranty.
[3] The truck was apparently first purchased by the original owner some nine months prior to Mr. Jeansonne's purchase.
[4] Counsel advised this court the $1,646.71 previously awarded appellant has been used to liquidate the charges of Womack Brothers, thus negating its consideration.