481 So.2d 179 (1985)
J. Monroe COMBS, Plaintiff-Appellant,
v.
Bobby HOWARD & Professional Consultants, Inc., Defendant-Appellees.
No. 84-694.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1985.
Rehearing Denied January 21, 1986.
Writ Denied March 21, 1986.
*180 Henry C. Perret, Jr., Lafayette, for PCI.
Billie C. Woodard, Lake Charles, for Combs.
James L. Fortson, Shreveport, for Howard.
Before STOKER, DOUCET, LABORDE, YELVERTON and KNOLL, JJ.
DOUCET, Judge.
This appeal arises from the employment of J. Monroe Combs by Professional Consultants, Inc., (PCI). The facts, as revealed by the trial court record and laid out in the trial court's reasons for judgment, are as follows:
Before September 1981, Combs was Executive Vice-President of Dalco Petroleum in Tulsa, Oklahoma. Due to certain conflicts with his superior, he was becoming discontented with his employment at Dalco. Bobby Howard was and is President and sole shareholder of PCI in Lafayette, La., as well as the owner of several other oilfield-related businesses. Combs and Howard knew one another as business associates and as personal friends. In 1981, Howard began looking for someone to manage PCI so that he could devote more time to his other businesses. He and Combs discussed by telephone the possibility of Combs resigning his position at Dalco in order to take over the management of PCI. As a result of their conversations, both men signed a letter[1] drafted by Combs. It provided that Combs would join PCI as a partner and that Howard would transfer 49% of his stock in PCI to Combs. Under its provisions, Combs would manage the consultants for a fee of $6,500.00 per month. Combs resigned from Dalco, moved with his family to Lafayette, and began working at PCI in September 1981. Combs received his monthly fee for management of the consultants mentioned in the letter. However, in spite of efforts to obtain a transfer of 49% of the stock in PCI, Combs never received any PCI stock. On July 22, 1982, Howard terminated Combs' employment with PCI. In July 1982, Combs sued PCI and Bobby Howard individually for breach of contract alleging damages in the amount of the value of the stock. PCI filed suit against Combs, seeking to recover professional fees and expenses *181 paid to Combs which they alleged he was not entitled to receive.
After a trial of both cases, the court gave written reasons for judgment. The trial judge found that the letter agreement was convincing evidence that Combs and Howard entered into a contract that provided for the transfer of the PCI stock. However, he found that PCI was not a party to the agreement. As a result, the action against PCI was dismissed. The trial court judge further held that Howard received sufficient consideration to create an enforceable contract. However, the judge stated that Combs failed to carry his burden of showing that he incurred any damage as a result of the breach of contract. Therefore, the court found that it could not make an award of damages in favor of Combs.
Regarding the claim of PCI against Combs, the court found no basis for the return of any professional fees paid to Combs, but found that travel expense payments in the amount of $969.15 for periods when Combs was using a company car, could be recovered.
Combs appealed the decision of the trial court with regard to damages for breach of contract. PCI appealed the decision of the court with regard to professional fees and travel expenses.
EXCESS FEES & EXPENSES
In its suit against Combs, PCI claims that Combs should return certain fees for consulting services paid to him in addition to his salary. The salary of $6,500.00 per month was paid to Combs for his services in managing the consultants working for PCI. He was not employed as a consultant. However, at certain times during his employment at PCI he acted as a consultant in addition to his other duties. When he did so, he billed the company for the extra work. The company would then bill the client. Consulting was outside Combs' scope of employment. Therefore, he is entitled to the fees paid to him for that work, over and above his salary.
CONTRACT
Until January 1, 1985, La.C.C. art. 1798[2] stated the need for offer and acceptance in order to form a valid contract. In his letter to Howard, Combs offered to become an employee of PCI if certain terms were met. By signing the letter under the word "Agreed", Howard accepted the offer and the terms. Also necessary for the validity of a contract is cause, or consideration. La.C.C. art. 1893.[3] Howard argues that he received no consideration for his obligation. However, it seems obvious that he stood to benefit from Combs' agreement to be employed by PCI, since he owned 100% of the stock in the company. Anything which benefitted the Company benefitted Howard. Further cause existed in the fact that Combs' employment by PCI freed Howard to pursue his other business ventures. Therefore, a valid contract was formed between Combs and Howard, in accord with the terms set out in the letter.
Howard's failure to fulfill the terms of the contract by transferring the stock to Combs was a breach of the contract. La. C.C. art. 1934[4] provided that the party who violates the obligations of the contract is liable to pay any damages which the other party has sustained as a result of the default. La.C.C. art. 1934 established the measure of damages for breach of contract as the amount of loss sustained or the amount of profit of which the creditor has been deprived.
"The burden is on the party claiming damages to prove each and every element of them by a preponderance of the evidence. Roncensky v. Smith, 390 *182 So.2d 1377 (La.App. 3d Cir.1980); Davis v. Transamerica Insurance Company, 289 So.2d 862 (La.App. 4th Cir.1974)."
Ouachita Equipment Rental Co. v. Trainer, 408 So.2d 930 (La.App. 2nd Cir.1981). Relying on Leurey v. Bank of Baton Rouge, 131 La. 30, 58 So. 1022 (La.1912), Mr. Combs argues that he is entitled to recover a sum equal to the value of 49% of the actual assets and good will of PCI at the time he began working there in September 1981. In the Leurey case, the court found that according to the evidence, the stock's value equaled the value of the "assets and goodwill or money earning capacity" of the corporate entity. In the case presently before us, Ronald Prejean, a CPA, testified that assuming all accounts receivable were collectible and that there were no accounts payable or liabilities not reflected in the corporation's financial statements, the net assets and unencumbered accounts receivable amounted to $265,000.00. He admitted that book value does not necessarily reflect market value. He did not testify as to the value of the stock, or even as to the market value of the corporation. Howard presented two experts in the regulation of corporate entities. After considering these factors enumerated in Leurey, including book value, they were of the opinion that the stock either had no value or had a minus value. Dr. Bruce Payne testified that 49% interest in PCI's stock would have no value. Peter Baudin testified that a minority share in the stock of PCI had negative value because its owner could be liable for payment of taxes on the income of the corporation (an "S" corporation) without receiving any income from the stock. Both opinions were based on the fact that PCI had no history of paying dividends and the improbability of future dividend payments, as well as upon the fact that the controlling interest in the firm, and therefore control of the profits, remained with Mr. Howard.
The trial judge was more impressed by the reasoning of Howard's two experts than he was by the testimony of Comb's two experts. We can find no manifest error in the trial judge's decision that on the particular facts of this case, the value of the stock was considerably less than its book value. On the other hand, the 49% interest was not without value, otherwise it would not have been included in the contract as an inducement for Combs to accept employment with PCI.
We find that Combs suffered a loss as a result of Howard's failure to transfer the stock. Although Combs has a legal right to recover that loss, he has failed to prove his damages exactly. The Supreme Court, in Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La. 1971), stated that:
"Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case. Civil Code Art. 1934(3); Brantley v. Tremont & Gulf Ry. Co., 226 La. 176, 75 So.2d 236 (1954), and decisions therein cited."
See also: Rogers v. Nelson Dodge, Inc., 407 So.2d 443 (La.App. 3rd Cir.1981). We have considered the facts and circumstances of the case including the expert testimony and the circumstances surrounding the execution of the employment contract. As a result, we set the value of 49% of the stock in PCI at $25,000 and award damages in that amount to Combs.
For the above reasons, the judgment of the trial court is affirmed in part, reversed in part, and rendered. Costs of the appeal are assessed against the defendants.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
KNOLL, J., dissents and assigns reasons.
STOKER, J., dissents for the reasons assigned by KNOLL, J.
KNOLL, Judge, dissenting in part.
I agree that this case should be reversed, however, I disagree with the majority's damage award of $25,000.
*183 The center of this controversy is the problem of valuing the stock of a closely held corporation which has no history of paying dividends. Bobby Howard maintains that 49% of the corporate stock is valueless because Combs is without power to control income or benefits. On the other hand Combs argues that any share of stock in a solvent corporation has value and that he is entitled to damages based on the stock's book value.
In my opinion the rationale of Leurey v. Bank of Baton Rouge, 58 So. 1022 (La. 1912), the only Louisiana law on point and the prevailing law, entitles Combs to damages based on the stock's book value. The majority relies upon Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971), which is a tort suit concerning an award of damages for personal injuries, and, Rogers v. Nelson Dodge, Inc., 407 So.2d 443 (La.App. 3rd Cir.1981), which is a suit to recover damages for a breach of contract to repair a motor home. While the majority found that Combs suffered a loss, with which I agree, in the award of damages it did not consider that the value of stock in a closely held corporation is book value. Leurey, supra. The award of $25,000 for Combs' 49% interest of the stock in PCI means that the majority discounted his minority interest by approximately 80%, which in my view is unreasonable. Combs' 49% interest had value significant enough to make the transfer of the PCI stock an integral provision of the employment contract.
From an economic standpoint shares of stock represent voting rights, and a fraction of ownership. Although a minority stockholder may not have effective voting rights, such minority holder nonetheless has a cognizable ownership interest proportional to the percentage of stock owned. The Leurey decision recognizes this facet of corporate ownership and formulates damages in reference to the book value. The record supports that Combs was damaged and clearly shows the book value.
In my view Combs should recover 49% of the book value of the corporate stock less a minority interest discount of 20%. Therefore, I would award Combs damages of $103,880.
For the foregoing reasons, I respectfully dissent in part.
NOTES
[1] "Mr. Bobby Howard

725 Alonda Drive
Lafayette, LA 70503
Dear Bobby,
Pursuant to our many conversations we have agreed that I will join your company as a partner owning 49% of the stock in Professional Consultants, Inc.
I understand as a partner that you will legally transfer to me, Monroe Combs, 49% of Professional Consultants, Inc. stock.
It is also understood that I will manage the drilling consultants for a fee of $6,500.00 per month or $78,000.00 anually (sic). This will be paid by two payments each month at $3,250.00 per payment. I will be responsible for my IRS and FICA payments.
If this is your understanding, please sign and return to me a copy of this letter.
Regards,
/s/ Monroe Combs
Agreed
/s/ Bobby Howard"
[2] La.C.C. art. 1798 was repealed on January 1, 1985. It was replaced by La.C.C. art. 1927. The law in this area is not changed by this revision.
[3] La.C.C. art. 1893 was repealed on January 1, 1985. It was replaced by La.C.C. art. 1966. The law in this area is not changed by this revision.
[4] La.C.C. art. 1934 was repealed on January 1, 1985. It was replaced by La.C.C. arts. 1995-1999, 2002-2003, 2009 and 2011.