588 So.2d 1125 (1991)
TWIN CITY PONTIAC, INC., Plaintiff-Appellee,
v.
Michael PICKETT, Defendant-Appellant.
No. 22,307-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1991.
*1126 Walker & Walker by C. Douglas Walker, for defendant-appellant.
Thomas H. Fowler, Jr., for plaintiff-appellee.
Before LINDSAY, BROWN and STEWART, JJ.
STEWART, Judge.
Defendant, Michael Pickett, appeals from a judgment which ordered him to pay an additional $2,000 on the purchase price of a motor vehicle bought from plaintiff, Twin City Pontiac, Inc., asserting the trial court erred in doing so and in dismissing his reconventional demand. We affirm.

FACTS
Michael Pickett and his wife shopped for a new Jeep Cherokee at Twin City Pontiac, Inc. on Friday, July 28, 1989. After test driving the Jeep, the Picketts asked Twin City's salesman, David Wiltcher, for his "best price deal." Wiltcher took them to his office and quoted a cash sale price of $19,442 less a $1,000 rebate discount. Pickett then indicated he would trade his 1983 Oldsmobile for $2,700. Wiltcher wrote up the sales contract, allowing for the trade-in and adding sales tax. In doing so, he treated the "9" in the $19,442 figure as a "7" which created a $2,000 error in Pickett's favor. Wiltcher then figured sales tax on a total (after trade-in) of $14,742. But for the treatment of the "9" as a "7" in the $19,442 price, this figure would have been $16,742. The Picketts left Twin City but returned to Wiltcher's office approximately an hour later and agreed to the amounts previously quoted.
Wiltcher took Pickett to the business manager, Dwight Hazelwood. It was Hazelwood's job to check the figures on rebates, taxes, and license fees and to sell service contracts. After making some changes on the contract, Hazelwood arrived at a total cash due amount of $15,270.52. Pickett paid for the Jeep with a $15,000 cashier's check and a $270.52 personal check. At Pickett's request, Hazelwood wrote "paid in full" on Pickett's copy of the contract. Pickett signed other documents including a blank "VEH" form required to obtain permanent vehicle tags, gave Wiltcher the keys to his 1983 Oldsmobile, and left in the Jeep on July 28, 1989.
Carey Zeigler, the general sales manager, saw the $2,000 mistake and notified Wiltcher and Hazelwood of the error. They tried unsuccessfully to contact Pickett by phone on Saturday, July 29, 1989. When Pickett came to the dealership on Monday, July 31, 1989, to give them the title to his trade-in, Hazelwood and Zeigler requested that Pickett pay the $2,000 or return the Jeep and rescind the sale. Pickett refused, signed the title, threw it on a desk, and quickly left the dealership.
Twin City subsequently sent Pickett a filled-in VEH form for his signature. Because this VEH form showed a sales price of $19,442, Pickett, upon advice of counsel, refused to sign the form. Twin City did not fill in and use the blank form signed on July 28. Consequently, Twin City did not request permanent tags for the Jeep. Twin City thereafter provided temporary tags to Pickett several times. At the time of trial, Pickett had not obtained permanent license plates. Pickett filed a reconventional demand for damages sustained because Twin City had failed to send in the sales tax to the state of Louisiana and obtain permanent tags for the vehicle. He alleged that it was an unfair trade practice for the dealership to refuse to send in the tax, thus causing penalties and interest to accrue.
The trial court rendered judgment for Twin City, finding a valid sales contract for $19,442. The trial court dismissed Pickett's reconventional demand, holding that *1127 Pickett refused to rescind the sale at his own risk and that by refusing to sign the second VEH form, he was just as much at fault for the vehicle tag situation as was Twin City. Pickett appeals the judgment.

DISCUSSION
We shall first address the issue of whether the trial court was clearly wrong in finding agreement as to the thing (the Jeep) and the price ($19,442) less the $1,000 rebate and the $2,700 trade-in.
The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself. Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price, and the consent. LSA-C.C. Art. 2439. The thing sold is acquired by the purchaser upon agreement on the object and the price, irrespective of whether there has been delivery or payment. LSA-C.C. Art. 2456. The price of the sale must be certain, serious, and representative of the value of the things sold. LSA-C.C. Art. 2464.
A party who demands performance of an obligation must prove the existence of the obligation. A party who asserts that an obligation is null, or that it has been modified or extinguished, must prove the facts or acts giving rise to the nullity, modification, or extinction. LSA-C.C. Art. 1831. The question of whether the evidence offered by a party corroborates his claim is a finding to be made by the trier of fact and that finding is not subject to reversal unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Shreveport Great Empire Broadcasting, Inc. v. Chicoine, 528 So.2d 633 (La.App.2d Cir. 1988).
Pickett argues that either a valid contract exists at a $14,742 price or, in the alternative, he did not consent to the $19,442 figure. He urges that he never saw the figures on the sales contract and was unaware of any figure except the bottom line price of $15,270.52 inclusive of taxes and fees. However, Twin City asserts that the $19,442 price was quoted to Pickett before any deductions were made and that there was simply an arithmetical error when the $2,700 was subtracted from the sales price of $19,442, leaving the balance shown as $14,742 instead of $16,742.
The trial court found that Twin City proved the existence of a perfected sale and that Pickett failed to prove the contract null, modified, or extinguished. The court stated in its reasons for judgment "the basic question here is whether there is a sale of this ... jeep automobile, this Cherokee Jeep. Pickett admits in his answer that there was a sale, the only thing then at issue is what was the price." The court found a sale based on an agreement as to the thing (the Jeep) and the price ($19,442 less $1,000 rebate and $2,700 for the trade-in), as evidenced by the original sales contract. The trial court accepted that Wiltcher quoted to Pickett a cash price of $19,442 less the $1,000 rebate before there was any discussion of trade-in, and that the trade-in allowance of $2,700 was discussed before and agreed to after Pickett returned to the dealership.
The trial court apparently believed that Pickett was aware or should have been aware of the error in light of the originally quoted price of $19,442 and the subsequent discussions as to the value of his trade-in. The trial court accepted as a fact, based upon his perception of the credibility of the witnesses, that the $2,000 subtraction error occurred after Pickett knew of and had agreed to the quoted price of $19,442 less the rebate and trade-in allowance. We find no manifest error in the trial court's factual determinations.
Having found no manifest error in the trial court's conclusion that Pickett and Twin City entered into a sales contract, we now consider whether the trial court was clearly wrong in refusing to rescind that contract.
An arithmetical error exists on the face of the contract. Twin City admits making this unilateral error. Pickett asserts that the trial court should have rescinded the contract rather than ordering enforcement where error exists.
*1128 A valid obligation requires, among other factors, consent. LSA-C.C. Art. 1927. Consent may be vitiated by error, fraud, or duress. LSA-C.C. Art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. LSA-C.C. Art. 1949.
Cause is the reason why a person obligates himself. A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. LSA-C.C. Art. 1967. Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other parties, or the law, or any other circumstance that the parties regarded, or should have in good faith regarded, as a cause of the obligation. LSA-C.C. Art. 1950.
A contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract where the other party knew or should have known that it was the principal cause. Shreveport Great Empire Broadcasting, Inc., supra; Cochran Ford, Inc. v. Copeland, 499 So.2d 509 (La.App.2d Cir.1986). In order for the defense of error to prevail, the party claiming it must prove a motive for the obligation, error as to the motive, and that the other party knew or should have known of the motive. Shreveport Great Empire Broadcasting, Inc., supra; Ouachita Equipment Rental Company v. Tommy Trainer, 408 So.2d 930 (La.App.2d Cir.1981).
When the error is to a quality forming the principal cause or motivation of a party, it only invalidates a contract when the other party knew or must be presumed to have known that the desired quality is the principal cause or motivation for the contract. However, when the price of a contract of sale is large and there is doubt as to an error in motive, the courts will lean heavily in favor of one seeking to avoid a loss against a party seeking to obtain a gain. Dorvin-Huddleston Developments, Inc. v. Connolly, 285 So.2d 359 (La.App. 4th Cir.1973), reversed on other grounds, 298 So.2d 734 (La.1974).
Testimony by Twin City's salesman, business manager, and general sales manager reveals that Twin City would not have agreed to accept $15,270.52 as the total cash due on the Jeep. Twin City's willingness to sell the Jeep was predicated on a sales price of $19,442 less rebate and tradein. Pickett argues that his consent was based upon the erroneous figures. The price to be paid or received was, in this case, a principal cause of the obligation.
Although we find that error existed as to a principal cause of this contract, the trial court was not required to rescind the contract. The mere existence of erroneous figures, does not mandate rescission.
LSA-C.C. Art. 1952 provides:
Art. 1952. Rescission; liability for damages
A party who obtains rescission on grounds of his own error is liable for the loss thereby sustained by the other party unless the latter knew or should have known of the error.
The court may refuse rescission when the effective protection of the other party's interest requires that the contract be upheld. In that case, a reasonable compensation for the loss he has sustained may be granted to the party to whom rescission is refused.
The trial record reveals that Twin City attempted, unsuccessfully, to contact Pickett immediately after the error was discovered. When Pickett came into the dealership the following Monday, July 31, 1989, to bring in the title to his trade-in vehicle, he was told of the error and given the option to pay the additional $2,000 or to have the sale rescinded. Pickett admits that he rejected both options. The trial court noted in its oral reasons for judgment that Pickett was given the opportunity to rescind the sale and "to put everything back like it was" but he refused to do so. Pickett rejected rescission at the time he *1129 learned of the error when it was most practicable to effectuate. The trial occurred ten months after the transaction. There was no evidence adduced regarding either the value of the Jeep at the time of trial or the number of miles driven by Pickett since the date of the sale.
In LSA-C.C. Art. 1952, the trial court is given discretion to forego ordering rescission where equity militates against it. Even where error is unilaterally committed and the erring party is otherwise entitled to rescission because the error relates to a principal cause of the contract, the court can allow reasonable compensation to the erring party where the innocent party's rights are thereby afforded more effective protection. In the instant case, the error related to the price which was the principal bargaining issue between the parties. If the trial court had ordered rescission in favor of Twin City, Pickett would have owed at least the value of the use of the Jeep for ten months which arguably could have exceeded $2,000. The effective protection of Pickett's interest requires that the contract be upheld.
Rescission serves to put the parties in the same position as if there were no contract. Cochran Ford, Inc., supra; LSA-C.C. Arts. 1952 and 2018. Because the disputed amount would place the parties in the position that they would have been in had there been no error, we find that the judgment of the trial court ordering Pickett to pay Twin City $2,000 represents a reasonable compensation for the loss sustained by Twin City.
Pickett also assigns as error that the trial court erred in its reasons for judgment in saying "on the contrary, if there had been two thousand dollars added to this purchase price, the defendant here would have been entitled to recover that from Twin City Pontiac as an overpayment or as a payment in excess of the purchase price." A complete review of the trial court's reasons for judgment reveals that the quoted statement was merely a hypothetical illustration and not the legal rationale of the court's conclusion that a valid sale existed. It is only the signed judgment that can be appealed from and not the oral reasons for judgment. Mitchell v. Mitchell, 543 So.2d 128 (La.App.2d Cir. 1989). We therefore find this assignment of error to be without merit.
Pickett's final assignment of error is that the trial court erred in dismissing his reconventional demand. He alleges that the failure of Twin City to send in sales tax to the state of Louisiana and obtain permanent tags for the Jeep constitutes an unfair trade practice.
It is unlawful to engage in any unfair or deceptive act or practice in the conduct of any trade or commerce. LSA-R.S. 51:1405 A. Any person who suffers an ascertainable loss of money or movable property as a result of such unfair or deceptive act or practice has a right of action to recover actual damages. LSA-R.S. 51:1409 A.
Although LSA-R.S. 47:501 states that the owner of a vehicle is responsible for obtaining vehicle registration and paying state registration or license tax, Pickett argues that he should not be held responsible where Twin City undertook to obtain the permanent tags. There is no legal basis for this argument. Defendant, upon advice of counsel, elected not to sign the VEH form required for Twin City to obtain the permanent tags. Twin City thereafter supplied temporary tags to Pickett every sixty days for ten months after the transaction in a good faith effort to help resolve the dispute. Twin City's actions neither offended public policy nor were immoral, unethical, oppressive, unscrupulous, nor substantially injurious to Pickett. We agree with the trial court that any damages or inconvenience suffered by Pickett were caused by his own conduct.
Pickett prayed for the statutory penalty and interest charges for Twin City's failure to forward the tax, but produced no evidence of actual damages. The record does not indicate whether the tax was ever assessed. In his brief, Pickett states that the penalties had yet to be paid at the time of trial and that no proffer on this issue was made due to the attitude of the trial judge.
*1130 The trial court made no exclusion of evidence or of any proffer of evidence. Pickett, in effect, elected at trial to abandon the reconventional demand for actual damages. This issue was not preserved for appeal, therefore, the request for remand is improper. See State v. Adams, 537 So.2d 1262, modified on other grounds, 550 So.2d 595 (La.App. 4th Cir.1989).
The trial court committed no manifest error in concluding that Pickett failed to prove either an "unfair or deceptive act or practice" or an ascertainable loss of money or movable property as a result of such practice.

CONCLUSION For the reasons stated, we affirm the trial court judgment at Pickett's costs.
AFFIRMED.
BROWN, J., dissents and assigns written reasons.
BROWN, Judge, dissenting.
Plaintiff, an automobile dealership, conducted a promotional campaign complete with on-the-spot-broadcasting, free cokes, etc. Defendant, Michael Pickett, responded and came looking for a "good" buy. The vehicle Pickett wanted was a new Jeep Cherokee. The dealership did not have a price sticker on the vehicle which put Pickett at a disadvantage in the bargaining process.
Pickett asked for the "bottom line" and the salesman came up with a price. Pickett accepted and was sent to the business manager who additionally sold him an extended warranty and approved the price plus taxes and license fees. Pickett paid, left his trade-in and drove off with his new Jeep Cherokee.
The next day the dealership decided it had made a mistake and wanted an additional $2,000. The dealership claimed a $2,000 error had occurred in its calculations. The dealership relied on the "sales contract" as proof of the error. This sales contract was a form drafted by the dealership with blanks to be filled in by the salesman concerning the price.
The trial court and the majority of this court are mistaken as to when the contract in this case was perfected. Initially, the salesman quoted a price of $19,442 less a $1,000 rebate which was not accepted by Pickett and thereafter, a trade-in allowance was discussed. The salesman unilaterally played with the figures and offered a price of $14,742 plus taxes and license fees. At first Pickett did not accept, but later returned and offered to purchase on those terms.
Pickett's offer was then sent to the business manager who was able to add to the price by selling a service contract. Once more, all the calculations were unilaterally worked by the business manager. Pickett, who only wanted a dollar amount, agreed to this final price. Pickett paid and his copy of the sales contract was marked "paid in full".
The salesman's initial quote was only the starting point in the bargaining process and not an offer and acceptance. Pickett asked for plaintiff's "best price deal" and when he got an agreeable price, he made an offer which was accepted by the business manager. Under these circumstances the trial court was clearly wrong in awarding judgment in favor of the dealership and for these reasons I dissent from the opinion of the majority of this court.