592 So.2d 904 (1991)
Ileana M. MONTALVO
v.
Hector E. MONTALVO.
No. 91-CA-611.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 1991.
Louis E. Madere, William P. Quigley, Loyola Law School Clinic, New Orleans, for defendant/appellant.
Edith H. Morris, Bennett Wolff, Jean Morgan Meaux, Wolff & Morris, New Orleans, for plaintiff/appellee.
Before GRISBAUM, WICKER and GOTHARD, JJ.
*905 GOTHARD, Judge.
This appeal arises from a child custody matter which began in August, 1990 when the parties separated while living in Virginia. In September, 1990, after obtaining primary custody of the parties' minor child from the Virginia court, the wife moved to Jefferson Parish, Louisiana.
On December 19, 1990 the wife filed a "motion to establish child custody jurisdiction and request for TRO" in the 24th Judicial District Court, Jefferson Parish, Louisiana. In that motion the wife made the following assertions:

VIII.
That on a past occasion the child has told her mother, the mover herein, that her father had taken her to an undisclosed place where he and another man had her take off all of her clothing so that she could be examined, even though she was not ill nor displayed any symptoms of being ill. This emotionally traumatized and distressed this young child.

IX.
That during one of Mr. Montalvo's visitations, he took the minor child to another one of his male friends apartment without permission and without disclosing the address or phone number to mover the location of said friends apartment.

X.
Immediately after the aforementioned visitation, the minor child told her mother that she wanted to urinate like Daddy.
As a consequence, the court issued a temporary restraining order directed to the husband prohibiting him from removing the child from this jurisdiction and exercising any unsupervised visitation.
On December 23, 1990, the husband filed a motion to vacate the temporary restraining order which asserted that a Virginia custody order signed on October 4, 1990 awarded him visitation with his daughter during the Christmas holidays. He further asserted that the allegations regarding sexual abuse were "blatantly frivolous and misleading," having been previously addressed by the Virginia Child Protection Services and deemed unfounded.[1] As a consequence of that motion, the temporary restraining order was rescinded. However, the mother refused to relinquish the child to her father.
On December 26, 1990, on motion of the husband, the court issued an ex-parte order, ordering an immediate transfer of the child to her father. The next day the husband filed a motion for sanctions and attorney's fees against the wife. Also on that day the husband, in a separate pleading, excepted to the wife's motion to establish custody. Those exceptions were maintained on January 7, 1991.
Also on January 7, 1991, the husband filed a petition for Writ of Habeas Corpus, a request for attorney's fees and a request for civil warrant pursuant to LSA-R.S. 13:1714(C). A hearing on that petition was held on January 25, 1991. Mrs. Montalvo was not present at that hearing, but was represented by counsel who told the court he was unable to locate his client.
The request for Habeas Corpus was granted, based on a January 4, 1991 Virginia order granting temporary custody to the husband. In a separate judgment, the trial court assessed sanctions and attorney's fees against the wife pursuant to LSA-C.C.P. art. 863 and LSA-R.S. 13:1700 et seq. Specifically, the wife is ordered to pay $500 for wilfully and fraudulently pleading sexual abuse. In addition, she is ordered to pay $500 per day for each day she fails to return the child "pursuant to this court's order." Further, she was ordered to pay all attorney's fees, witness fees, and expenses of the husband, including witness fees and expenses in connection with the husband's Virginia attorney's travel to Louisiana. A request by the wife's attorney to hold this matter open *906 was denied. It is from that judgment, assessing sanctions, that the wife appeals.
At the hearing the husband offered testimony from Raymond LeFevre, a private investigator hired by Mr. Montalvo, who testified that he went to Mrs. Montalvo's home on January 9, 1991 and spoke to her parents. He informed them that a hearing on the petition for Writ of Habeas Corpus was set for January 17, 1991. He also testified that he tacked the Writ of Habeas Corpus on the door. He returned on a second occasion and tacked a copy of a writ disposition from this court dated January 18, 1991 on her door. The writ disposition reversed a judgment of the trial court dismissing the husband's rule for sanctions and petition for Writ of Habeas Corpus and ordered the trial court to hear the matter "on or before January 25, 1991." He also indicates he attached a copy of a letter from Mr. Montalvo's attorney, although it is not clear from the record or the testimony what information was contained in that letter.
Mr. Montalvo's Virginia attorney, Alan Plevy, testified concerning the proceedings in the Virginia court which culminated in the order awarding temporary custody of the minor child to Mr. Montalvo on January 4, 1991. A copy of that order is contained in the record.
The trial court found that jurisdiction lies with Virginia and gave full faith and credit to the January 4, 1991 Virginia order. As a result a Writ of Habeas Corpus was issued ordering Mrs. Montalvo to relinquish custody of the minor child to Mr. Montalvo. The court further found that the allegations of sexual abuse, which were investigated and deemed unfounded by Virginia authorities and then repeated in Louisiana, were "frivolous and intended to confuse the court." In the judgment the trial court held that Mrs. Montalvo "wilfully and knowingly filed a false and fraudulent pleading." She was assessed $500 in sanctions for that action.
LSA-C.C.P. art. 863 D & E authorizes the court to impose sanctions for the filing of any pleading interposed for any improper purpose. In the instant case, the wife made allegations of sexual abuse identical to those made previously in the child's home state of Virginia. When confronted with the fact that these allegations were fully investigated and deemed to be unfounded, she offered no evidence to show that the investigation was ineptly performed or that the conclusion was incorrect. Based on these facts we find no manifest error in the trial court's finding or in the award of $500 in sanctions. We uphold that portion of the judgment.
However, we are troubled by the portion of the trial court's judgment whereby Mrs. Montalvo was assessed $500 per day for each day she fails to return the child "pursuant to this Court's order." In making this assessment the trial court stated;
...."I might also include some time in Parish Prison when she answers to the Court and I wouldn't be taking this attitude if I didn't ... if I wasn't convinced that her allegations of sexual abuse were frivolous and intended to confuse the court." ...
In our view this constitutes a judgment of contempt of the court's order, dated the same day, to return the child, before notice of the order was afforded Mrs. Montalvo and before a chance was offered for compliance with the order.
Because Mrs. Montalvo was not present when the court issued the order, any charge of contempt would be considered constructive. LSA-C.C.P. art. 222. Mrs. Montalvo may be considered in constructive contempt if she wilfully disobeys a lawful judgment of a court. LSA-C.C.P. art. 224(2). However, Louisiana law provides specific procedures for finding and punishing constructive contempt. LSA-C.C.P. art. 225A provides in pertinent part:
Except as otherwise provided by law, a person charged with committing a constructive contempt of court may be found guilty thereof and punished therefor only after the trial by the judge of a rule against him to show cause why he should not be adjudged guilty of contempt and punished accordingly. (Emphasis added)
*907 Further, because a reading of the record clearly indicates the court's purpose was punitive rather than to force compliance, the contempt can be considered criminal. State in the Interest of R.J.S., 493 So.2d 1199 (La.1986). Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). Consequently, all due process requirements must be afforded the accused in such a proceeding. See Bloom v. Illinois, supra.
In the matter before us, a party was ordered to perform an action and punished for non-compliance in the same hearing. The provisions of the Louisiana Code of Civil Procedure and the Due Process Clause of the Fourteenth Amendment mandate reversal of the trial court's judgment as it relates to this order. The defendant was not given clear and actual notice of the need for compliance, nor of the facts constituting the contempt as required by law. Gro-Je's Civic Ass'n. Inc. v. Reed, 525 So.2d 192 (La.App. 1st Cir.1988). Thus, that portion of the judgment which requires Mrs. Montalvo to pay $500 per day each day she fails to relinquish custody of the child is annulled and set aside.
The final portion of the judgment assesses various costs including attorney's fees. Specifically, the judgment states:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Ileana M. Montalvo wilfully and knowingly filed a false and fraudulent pleading and she subsequently willingly and knowingly refused to honor valid court orders resulting in Mr. Montalvo's incurring certain expenses. All attorney's fees, court costs, private investigator fees, witness fees, and expenses submitted by Hector E. Montalvo on this date be and are hereby granted. Documentation of said expenses has been provided to Brian Sondes. Documentation of future expenses shall be submitted to Brian Sondes. This court shall leave open any expenses incurred for today's proceeding and for any future expenses which may be incurred to enforce the rulings of this court. More specifically, Ileana M. Montalvo shall pay attorney's fees in the amount of $12,826.00 accrued as of January 24, 1991; expenses incurred by Hector E. Montalvo of $1,928.72 through December and expenses incurred for the month of January, $1,584.24; court costs are assessed in the amount of $581.92; private investigator fees on behalf of Raymond LeFevre are assessed in the amount of $740.00; plane fare for attorney Alan Plevy, witness in this matter, of $800.00 and Alan Plevy shall submit and be entitled to his witness' fees and other expenses in connection with his travel and his testimony in this matter.
Mr. Montalvo requested attorney's fees and other expenses pursuant to LSA-C.C.P. art. 863 and LSA-R.S. 13:1714 B. At the hearing he presented an itemized bill from his attorney, stating charges from January 3, 1990 to January 24, 1991. Because some of the charges dated 1990 coincide with events which actually occurred in January 1991, we believe the 1990 dates to be incorrect. Therefore, we believe the fees charged totalling $10,202.00 were billed from January 1, 1991 to January 24, 1991, a period of about three weeks. Additionally, the bill shows an unitemized previous balance of $2,281.00 for a total of $12,483.00. The trial court's award of $12,826.00 for legal fees was based on testimony given by Mr. Montalvo as well as the itemized statement by the attorney. The reasonableness of that bill is challenged by appellant.
A reasonable attorney's fee is determined by the facts of an individual case. In making awards for attorney's fees, the trial court is vested with great discretion, the exercise of which will not be interfered with save in a case of clear abuse. D'Angelo v. Poche, 434 So.2d 120 (La.App. 5th Cir.1983); writ den. 435 So.2d 444 (La. 1983); Blue v. Schoen, 556 So.2d 1364 (La. App. 5th Cir.1990) modified 559 So.2d 1347 (La.1990). As we stated in Wuertz v. Tobias, 512 So.2d 1209 (La.App. 5th Cir.1987), at 1213:
The Code of Professional Responsibility (now Rules of Professional Conduct) prohibits an attorney from collecting a fee that is in excess of a reasonable fee, *908 DR 2-106(A) (Rule 1.5), and sets forth factors to be considered as guides in determining the reasonableness of attorneys' fees. While DR 2-106 is an internal disciplinary rule, the factors listed therein provide guidance as to the appropriateness of a fee. DR 2-106(B) (Rule 1.5) provides:
"A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent."
Here there is an itemized statement and a clear record of intensive litigation over the three week period which included the Christmas holidays. There is also evidence to show that the husband's attorneys spent considerable time with the authorities attempting to locate the child. Under these circumstances we do not find manifest error in the award.
For the foregoing reasons, the judgment of the trial court ordering Mrs. Montalvo to pay $500 per day, each day she fails to return the child is reversed. In all other respects the judgment below is affirmed. Each party is to pay his own costs.
REVERSED IN PART, AMENDED IN PART.
NOTES
[1] A letter to that effect from the Virginia authorities is included in the record. There was also an indication that the man who took off the child's clothing and examined her was the child's regular pediatric physician in Virginia.