608 So.2d 643 (1992)
FRANKLIN STATE BANK & TRUST COMPANY, INC.
v.
Debra Kay Broussard HERRING.
No. 24168-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
Writ Denied January 8, 1993.
*644 Cooper and Hales by Thomas E. Cooper, Jr., Rayville, for appellant.
Singer & Boothe, by Johnny R. Boothe, Winnsboro, for appellee.
Before MARVIN, C.J., and HIGHTOWER and VICTORY, JJ.
MARVIN, Chief Judge.
In this action on a mortgage note, we affirm a judgment against Debra Herring which dismissed her reconventional demands. We reverse the judgment on the main demand which awarded the plaintiff bank $2,693.54, with recognition of the bank's mortgage on Mrs. Herring's 1980 mobile home.
The note, executed in 1983 for $13,160 at a variable interest rate (Franklin State Bank Prime + 2.5 percent per annum from date), was "payable in 84 monthly payments of $239.98 including interest beginning June 5, 1983, and monthly thereafter until paid in full." Mrs. Herring paid the 84 monthly installments of $239.98 as each became due (a total of $20,158.52) and sought to obtain the paid note to effect cancellation of the mortgage. At the time of the last payment the bank informed her that it had made a "mistake on the interest..." In its petition, the bank alleged the note was past due and, at trial, contended 12 more monthly payments would be required to pay it in full.

OTHER FACTS
Mrs. Herring was Debra Broussard, wife of Todd Broussard, when the note and mortgage were executed. She later divorced Mr. Broussard and thereafter married Mr. Herring, continuing to reside in the mobile home and paying the monthly installments on the note. Several years before the 84th monthly payment was made on the note on May 21, 1990, the bank "decreased the [interest] rate on the loan. I think it's set up at FSB base rate now and that is 10.75 [percent]," said the bank president during the trial. He explained that the "initial rate [of interest] was 15.5 [percent] and it [has] ... decreased since ... May 26th, 1983." The bank president, who was not the officer who made the loan in 1983, testified that "84 payments would not amortize the [loan]," and that $2,693.54 was owed on the loan. The president added, however, that Mrs. Herring was "not paying 2.5 percent over and above [the] prime rate," and that "prime and base is not the same thing." The record does not show and the bank's only witness does not explain how or by whom the computation was made to determine that Mrs. Herring owed the bank $2,693.54 over and above the $20,158.32 she had paid over a seven-year period. The record also does not show why the judgment awards interest at "14.75 percent per annum ..."
*645 Mrs. Herring testified the bank never told her how the interest rate was computed and that the only notice she received from the bank was a "monthly statement [that] had a due date at the bottom of five five ninety ... [and] by five five ninety [we think, meaning May 5, 1990] ... when I went in to pay it ... [a bank teller] told me, `well, they must have made a mistake on the interest....' I went in thinking here I was making my final payment ..."
The record, containing only the president's testimony and Mrs. Herring's testimony, leaves much to be desired.
We reproduce the note and the chattel mortgage with which it is paraphed:

*646 
*647 

DISCUSSION
Typewritten terms in a negotiable instrument control printed terms. Words control figures, but if words are ambiguous the figures control. LRS 10:3-118. Where the words of a contract are clear, explicit and lead to no absurd consequences, the contract must be enforced as written. See Horton v. Mobley, 578 So.2d 977 (La.App. 2d Cir.1991), writ denied.
The note and the mortgage with which it is paraphed apparently were prepared and typed by the bank. These instruments clearly state that Mrs. Herring is obligated to pay 84 monthly payments of $239.98 to satisfy an indebtedness of $13,160 at a rate of interest that is "FSB Prime + 2.5%" per annum. It is also clear that the monthly payments were deemed by the bank as "including interest," rather than "excluding" interest. Mrs. Herring paid more than the $13,160 principal. The note bears a stamp, part of which is unreadable because it is over other print, that suggests *648 that something (the interest rate?) about Mrs. Herring's obligation on the note is "SUBJECT TO CHANGE ON A DAILY BASIS."
Courts have allowed a contracting party relief from arithmetical error that party has created in a written instrument when that error affects a cause without which the obligation would not have been incurred and that cause was known to the other party (CC Art. 1949), where the error was discovered and brought to the attention of the other party within a day or two. Twin City Pontiac, Inc. v. Pickett, 588 So.2d 1125 (La.App. 2d Cir.1991). In a situation where the alleged error in calculation of remuneration owed under a verbal contract persisted consistently each month over a period of many years, the one complaining of the error was not given relief. Gamble v. D.W. Jessen & Associates, 509 So.2d 1041 (La.App. 3d Cir.1987), writ denied.
The bank, as the party asserting error, had the burden of proving that the error affected a cause without which the bank would not have agreed to make the loan to Mrs. Herring (the first conjunctive element of CC Art. 1949), and that Mrs. Herring knew the bank would not have made the secured loan unless she was obligated to pay 96 monthly payments of $239.98 (the second conjunctive element of CC Art. 1949). The evidence in this record simply does not prove either element.
The bank made the loan on Mrs. Herring's obligation to pay the principal and a variable rate of interest in monthly installments, secured by a mortgage on the mobile home. The second page of the chattel mortgage states that "Buyer acknowledges receipt of a copy of this mortgage contract and disclosure statement which was completely filled in prior to the Buyer's execution thereof."
From this record we cannot determine that the actual rate of interest charged by the bank in any given month (or day?) of the seven-year period was more or less than what was paid by Mrs. Herring in the 84 monthly installments.
The bank's only witness tells us that the rate once was 15.5 percent and was later 10.75 percent at sometime during the seven-year period. The record may allow the conclusion that Mrs. Herring was given a copy of the chattel mortgage in 1983, but does not show or suggest that the bank informed Mrs. Herring at any time of the status of the loan other than of the due date of the 84th installment (5-5-90) and of the bank's "mistake on the interest" when Mrs. Herring made the 84th monthly payment.
Under the circumstances of this record and the duration of the asserted "error," we cannot construe Mrs. Herring's obligation to pay the bank as being any greater than "84 monthly payments of $239.98 including interest beginning June 5, 1983." Compare Odom v. Hulse, before remand 153 So.2d 177 (La.App. 2d Cir.1963), and after remand 170 So.2d 147 (La.App. 2d Cir.1964), writ refused.
We shall reverse the judgment in favor of the bank and render judgment decreeing that the mortgage note in question has been satisfied by the 84 monthly payments made by Mrs. Herring and ordering the bank to mark the note "paid" and return it to Mrs. Herring.

OTHER ISSUES
Mrs. Herring contends that the trial court should not have dismissed her reconventional demand for recoupment, in which she alleged prescribed disclosure violations by the bank under the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601, et seq. That demand was dismissed on the trial court's sustaining the bank's exception of prescription.
15 U.S.C. § 1640(e) provides a one year statute of limitations for actions under the Consumer Credit Protection Act, but "does not bar ... action[s] ... more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off ..., except as otherwise provided by State law." Emphasis added.
We emphasis that our state law, in CCP Art. 424 in part, provides "otherwise:"
A prescribed cause of action arising under The Federal Consumer Credit Protection *649 Act may not be used as a defense even if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff.
Mrs. Herring also contends that the trial court erred in finding that the bank did not violate the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, et seq. RESPA covers loans secured by "real estate," not a consumer loan secured by a chattel mortgage on a mobile home. Mrs. Herring's loan was not secured by real estate and the bank is not liable to her for violations of RESPA.

DECREE
The judgment against Debra Herring on the mortgage note is reversed. Judgment is rendered in favor of Mrs. Herring decreeing the mortgage note in question has been satisfied by her payment of the 84 installments. The bank is ordered to mark the note paid and return it to Mrs. Herring. Costs are assessed against the bank.
The judgment dismissing Mrs. Herring's reconventional demand is affirmed. Costs, here and below, are assessed against appellee.
REVERSED IN PART, AFFIRMED IN PART, and RENDERED.