JiDOUCET, Judge.
This appeal concerns a fee dispute arising out of an attempt by a distributor to recover from a manufacturer damages paid pursuant to a personal injury suit.
In 1983, two men were killed in an oil rig accident caused by a defective chain. The families of the two men filed wrongful death suits naming as defendant Gearench, Inc. (Gearench), the seller of the chain. Gear-ench filed a cross-claim against Columbus-McKinnon (Columbus), the manufacturer of the chain. Gearench was defended by its primary insurer, Travelers Insurance Company (Travelers). Travelers hired the law firm of Davidson, Meaux, Sonnier, McElligott & Swift (Davidson) to represent its insured. Davidson regularly represented Travelers in such matters, always at an hourly fee plus expenses. After completion of trial, but before a verdict was announced, Gearench settled with the plaintiff for $2,000,000. Gear-ench retained its right to pursue its cross-claim against Columbus. Travelers paid its policy limits of $300,000. Mission National Insurance Company (Mission), as Gearench’s excess insurer, paid $1,700,000.
^Gearench pursued its claim against Columbus. Davidson continued to represent Gearench at an hourly fee plus expenses. The U.S. District Court rendered judgment against Columbus in the full amount of the settlement plus interest. Columbus appealed the judgment.
*481 On February 24,1987, the California State Insurance Commissioner obtained an order appointing a receiver for Mission. An ancillary receiver was appointed in Texas. The California receiver sent the Gearench file to the Texas receiver. The Texas receiver, by letter dated July 28, 1987, contacted Davidson. He asked the fee Davidson would charge to represent them in the Gearench matter, and suggested a 25% contingency fee. Davidson replied indicating that a 25% contingency fee would be appropriate. Further correspondence confirms the Texas receiver’s agreement to the fee arrangement.
By that time the matter had been remanded to the U.S. District Court by the U.S. Fifth Circuit Court of Appeal. Columbus had asked the Fifth Circuit for a rehearing. More than three years passed before the judgment was affirmed and became final. This end was achieved only after two more appeals, two more remands, an attempt by Columbus to obtain a writ of certiorari to the U.S. Supreme Court and other proceedings, all in the federal court system. These extremely complex proceedings required extensive and time consuming research in connection with a multiplicity of briefs and memo-randa.
Davidson charged Travelers $176,000 for its defense of the case. $61,976.10 of that amount was attributable to the cross-claim against Columbus. Davidson notified the Texas receiver that it would distribute Mission’s portion of the proceeds of the judgment to the Texas and California receivers, minus $543,382.43, representing the 25% contingency fee agreed upon. The California receiver objected to the fee.
Davidson began a eoneursus proceeding and deposited the disputed fee in the registry of the court. Davidson further sued for a judgment declaring it to be the owner of the funds. After a trial on the merits, the trial court rendered judgment in favor of Davidson. The Texas and California receivers appeal.

\^VALIDITY OF THE FEE AGREEMENT

The California and Texas receivers argue that the trial judge erred in failing to find the fee agreement invalid. They contend that the agreement was entered in error and that the Texas receiver had no authority to enter the agreement.
La.C.C. art. 1949 provides that:
“Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.”
The trial judge has much discretion in deciding whether such error has occurred. Findings of fact on this subject, where adequately supported by the record, should not be disturbed in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973). Where there are two permissible views of the evidence, the trial court’s choice between them can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). After reviewing the record in this matter we conclude that the record adequately supports the trial judge’s conclusion that no error occurred.
Mark Ross of the Texas receiver’s office testified that he did not know that Travelers was primary and Mission was excess. He said that Davidson did not tell him that they were trying to recover the whole amount paid by both insurers. However, he admitted having the entire file before him and failing to review it in its entirety before retaining Davidson. He testified that the Texas receiver did not have sufficient liquidity to hire counsel on an hourly basis. The correspondence between Davidson and the Texas receiver makes it clear that Texas was aware that Davidson was already fully involved in the litigation and appeal process. Given the information before the Texas receiver, we cannot conclude that he was in error as to Mission’s situation in the case or as to that of Davidson in the representation of the parties.
Even assuming the Texas receiver made an error, he had the burden of proving both an error as to motive and that Davidson was aware of the motive.
“A contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract *482 where the other party knew or should have known that it was the principal cause. Shreveport Great Empire Broadcasting, Inc. [v. Chicoine, 528 So.2d 633 (La.App. 2 Cir.1988) ]; Cochran Ford, Inc. v. Copeland, 499 So.2d 509 (La.App. 2d Cir.1986). In order for the defense of error to prevail, the party claiming it must prove a motive for the obligation, error as to the motive, and that the other party knew or should have known of the motive. Shreveport Great Empire Broadcasting, Inc., supra; Ouachita Equipment Rental Company v. Tommy Trainer, 408 So.2d 930 (La.App. 2d Cir.1981).” (emphasis added)
Twin City Pontiac, Inc. v. Pickett, 588 So.2d 1125, 1128 (La.App. 2 Cir.1991). See also Bordelon v. Kopicki, 524 So.2d 847 (La.App. 3 Cir.1988). Our review of the record, reveals no evidence that would suggest that Davidson was aware of the receivers’ motive for entering the contract or of the supposed error. Therefore, we cannot say that the trial judge erred in failing to find error such as to vitiate consent to the contract.
Further the testimony of the representatives of the California and Texas receivers’ offices shows that Texas did have authority to contract for legal services. Joe Gaetano, senior vice-president for claims and liquidation processing for Mission Insurance Company Trust in California, testified at trial. He stated that the Geareneh file was sent to Texas in error. However, he admitted that while the Texas receiver had the file he had full responsibility for handling it. He further admitted that an excess carrier may hire its own counsel. Mark Ross testified that once the California receiver sent the file to Texas, the Texas receiver had authority over it. The record indicates and it is important to note that the Texas receiver did not immediately join in the fee dispute. Rather he initially indicated that he was amenable to the fee as agreed upon. Therefore we conclude that the contract is valid.

REASONABILITY OF FEE

The appellants argue that Mission did not need representation. To reach this conclusion the appellants would have us consider the case in hindsight. However we believe that we must consider the situation as it appeared to the parties at the time the contract was entered and the work done. Before the fee agreement was entered, Travelers could have settled the case for only its portion of the original settlement or even for a smaller amount. Under Louisiana law, Travelers, as primary, had no duty to the excess insurers and would have incurred no liability by settling for an amount that would l5not include Mission’s expenditures. Patrick Juneau, an attorney, testified as an expert in the field of insurance defense law and practice. He stated that Travelers could have settled at any time without the consent of Mission or its receivers. If this had happened, Mission, without representation, would have been left without means of recovery. The risk here was greater than usual since Travelers was primary insurer for both Geareneh and Columbus. The outcome of the litigation was essentially a matter of bookkeeping for Travelers. Mission risked real loss.
The appellants argue that the agreed upon fee is excessive and should be reduced.
“A stipulation in a note or other written agreement for a specified attorney fee does not preclude inquiry by courts into the reasonableness of the fee. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982).”
Ruston State Bank & Trust Co. v. Streeter, 545 So.2d 1255, 1259 (La.App. 2 Cir.1989). However, the court stated in Central Progressive Bank v. Bradley, 506 So.2d 711, 712 (La.App. 1 Cir.), writ denied, 508 So.2d 74 (La.1987):
“A trial court judge has much discretion in fixing an attorney fee, and his award will not be modified on appeal absent a showing of an abuse of that discretion. Aetna Finance Company of Baton Rouge v. Perkins, 448 So.2d 121 (La.App. 1st Cir.1984).”
See also Teche Bank and Trust Company v. Willis, 93-732 (La.App. 3 Cir. 2/2/94) 631 So.2d 644 (La.App. 3 Cir.1994).
The Louisiana Supreme Court in Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 116 (La.1979) said that:
*483 “Under our rules an attorney clearly may contract with a client to provide legal ser- . vices for a fee contingent and calculated upon the amount recovered or preserved, so long as the contract does not restrict the client’s right with or without cause to discharge the attorney, or grant as a fee to the attorney without requirement of commensurate services an immutable proprietary percentage of the client’s claim, or result in an attorney collecting a ‘clearly excessive’ fee which has not been ‘earned’ as defined by the rules.”
Rule 1.5 of the Rules of Professional Conduct prohibits an attorney from collecting a fee that is in excess of a reasonable fee. It sets forth factors to be considered as guides in determining the reasonableness of attorneys’ fees. While Rule 1.5 is an internal disciplinary rule, the factors listed therein provide guidance as to the appropriateness of a fee, as follows:
16“(a) A lawyer’s fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.”
See Montalvo v. Montalvo, 592 So.2d 904 (La.App. 5 Cir.1991)
Accordingly, we will examine the record in light of Rule 1.5 of the Rules of Professional Conduct to decide whether the trial judge abused his discretion in finding that the fee was earned and not “clearly excessive.”
Time and labor involved. Much work was done for both insurers. A judgment against Columbus had already been granted at the time Mission retained Davidson. Extensive work on appeal and on remand was required after the Texas receiver retained Davidson. The issues raised were extremely complex. Extensive research was requited. A multiplicity of briefs and memoranda was prepared. Counsel made repeated court appearances. Shortly after Davidson was retained by the Texas receiver Columbus asked the U.S. Fifth Circuit Court of Appeal for a rehearing of a prior decision of that court. The matter was remanded to the district court in order that specific findings be made as to the reasonableness of the settlement amount. Research was done and a memorandum prepared. The district court found the settlement to have been reasonable. Columbus again appealed the district court’s decision to the U.S. Fifth Circuit Court of Appeal on issues involving | jurisdiction and the reasonability of the settlement. This again required that research and a brief. The appellate court set the case for oral argument. The appellate court decided that the district court did not have admiralty jurisdiction over the dispute. It vacated the judgment against Columbus and remanded the matter to the district court for a determination of whether diversity jurisdiction existed. Davidson and Columbus both petitioned the appellate court for a rehearing. Davidson’s petition was supported by a memorandum. Again on the district court level, Davidson moved to be allowed to amend the original petition to allege diversity jurisdiction. Columbus opposed the amendment. Davidson moved for summary judgment asking that diversity jurisdiction be recognized and that the judgment against Columbus be reinstated. Davidson supported its motion with seven affidavits establishing diversity. To obtain the affidavits, it was necessary to locate the original defendants and convince them to sign affidavits estab- *484 lishirig legally diverse domiciles. At least two memoranda were written by Davidson in support of its position. The motion for summary judgment was granted. Columbus again appealed. The appellate court upheld the district court judgment allowing the amendment after first hearing oral arguments. Columbus applied for a writ of certiorari to the U.S. Supreme Court. Davidson submitted a brief opposing the application. The U.S. Supreme Court denied the application. In 1991, more than three years after the Texas receiver retained Davidson, the $2,000,000 judgment against Columbus became final.
Preclusion of other employment. The record does not show that other employment was precluded by this retainer.
Fee customarily charged. The testimony on this point was in conflict. Patrick Juneau testified that it is not unusual to see a primary insurer pay its counsel on an hourly basis and an excess insurer pay a contingency fee, even where one attorney represents both insurers. Joe Gaetano also said that he has seen similar claims handled on a contingency fee basis. Jack Keith was qualified as an expert in the handling insurance claims. He said that he had never seen a case where onejgon a contingency fee basis. However, where the evidence is in conflict, the reasonable credibility evaluations of the trier of fact should not be overturned. Rosell, supra.
The amount involved and results obtained. The amount involved was $2,000,-000. Davidson obtained a 100% recovery.
The nature and length of the relationship. This was apparently the first time Davidson represented either the Texas receiver or Mission. However, Rule 1.5(b) states that:
“When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.”
In this case the Texas receiver contacted Davidson and suggested a 25% contingency fee. The two parties to the fee agreement exchanged correspondence and telephone calls with regard to the fee. The final agreement was confirmed by correspondence. The Texas receiver was well aware of the fee being charged.
The experience, reputation and ability of the attorneys. The Davidson firm and the attorney actually handling the case were quite experienced in the field. Further their knowledge of the specific ease gave them an advantage over other attorneys in pursuing recovery.
Whether the fee was fixed or contingent. The fee in this case was contingent. The receivers make much over the fact that the attorneys would have been paid by the primary even if they lost. However, at the time the suit was ongoing the possibility still existed that the primary insurer would settle with Columbus. The excess insurer would then have faced the risk that the entire ease would be dismissed, compelling the receivers to retry the entire matter. In such a case Davidson would have risked earning nothing and losing all expenses.
In light of the guidelines of Rule 1.5 and the evidence adduced at trial, the trial judge, making reasonable credibility evaluations, could have reasonably concluded 19that the fee was not unreasonable. Accordingly, the judgment of the trial court is affirmed. Costs are to be paid by the defendant/appellants.
AFFIRMED.
WOODARD, J., dissents and assigns written reasons.