MCCALLUM, J.
*1228 Blane Haygood appeals the judgment of the trial court asserting two errors: (1) the trial court erred when it signed a judgment pursuant to a stipulation that he alleges was made in error; and (2) the trial court erred when it denied his motion for new trial without holding a hearing.
For the following reasons, we affirm the trial court's judgment.
FACTS
Rhonda Haygood ("Rhonda") and Blane Haygood ("Blane") were formerly married. In the divorce proceedings, they entered into an oral stipulation regarding the partition of their community property. The attorney for Rhonda recited the stipulation into the record. Counsel for Blane agreed that the terms, as stipulated, accurately reflected the parties' agreement. Blane was present during the entry of the stipulation, and acknowledged under oath that he heard the stipulation and agreed to abide by it. The court accepted the stipulation and deemed it a "final order."
Subsequently, a dispute arose regarding the judgment. Specifically, the parties could not agree on the application of the phrase, "gain they will have to realize." The parties each filed a proposed judgment reflecting his or her respective position. In the alternative, Blane filed a motion for new trial,[1] seeking to vacate the stipulation on the ground that there was no "meeting of the minds."
Blane alleged that the two parties attached different meanings to the term "gain." He argued that the trial court should have allocated to him 70.60% of the net cash proceeds from the sale, but only 50% of the taxable gain generated by that sale.
Without holding a hearing on Blane's motion for new trial, the trial court signed Rhonda's proposed judgment and issued written reasons for judgment, rejecting Blane's contentions.
Blane then appealed the trial court's judgment. He argues that where a "meeting of the minds" did not occur, then the court could not enforce the stipulation. Therefore, he asserts that the trial court erred in signing Rhonda's proposed judgment. He further argues that the court erred when it ex parte denied his motion for new trial.
Stipulation and Judgment
With regard to the stipulation in question, both parties agree that the applicable passage is as follows, to-wit:
Then, I'll mention that there is in Mr. Chris Bowman's trust account, former counsel for Mr. Haygood, the sum of ... $1,258,650 in cash. That will be allocated $370,000 in cash to... [Rhonda and]... $886,650 of said sum to Blane. These sums representing the sales price of items 13, 14, and 15 from the hearing officer's master list, which were three *1229 (3) tracts of land and a camp that is located on one of those lands. So I guess I should clarify by saying those having been liquidated, the cash will be allocated in the manner that I just mentioned. Likewise, the parties have agreed that the gain they will have to realize from the sale of that property will be allocated proportionately based on those cash numbers I recited. And just for clarity of the record, my client's portion will be 29.40%. 29.40% will be allocated of the gain, that is will be allocated to my client. The remainder will be allocated to Mr. Haygood.
Likewise, contained in the judgment signed by the trial court, the applicable portions are as follows, to-wit:
IT IS ORDERED, ADJUDGED AND DECREED that the following assets are hereby allocated to defendant, Blane Dudley Haygood, to-wit:
1. $888,650.35 in cash, representing a portion of the net proceeds from the July 2017 sale of immovable property formerly owned by the community, which net proceeds total $1,258,650.35 before partition
...
IT IS ORDERED, ADJUDGED AND DECREED that the following assets are hereby allocated to Plaintiff, Rhonda Routon Haygood, to-wit:
1. $370,000, representing a portion of the net proceeds from the July 2017 sale of immovable property formerly owned by the community, which proceeds total $1,258,650.35 before partition
...
IT IS ORDERED ADJUDGED AND DECREED that the following obligations/liabilities are hereby allocated to Defendant, Blane Dudley Haygood, and he shall be solely responsible for each, to-wit:
...
2. All income taxes due on his proportionate share of the taxable gain realized as a result of the July 2017 sale of immovable property, which share consists of seventy and 60/100 percent (70.60%), calculated by determining the proportionate share of net sale proceeds allocated to him herein
...
IT IS ORDERED, ADJUDGED AND DECREED that the following obligations/liabilities are hereby allocated to Plaintiff, Rhonda Routon Haygood, and she shall be solely responsible for each, to-wit:
1. All income taxes due on her proportionate share of the taxable gain realized as a result of the July 2017 sale of immovable property, which share shall consist of twenty-nine and 40/100 percent (29.40%), calculated by determining the proportionate share of net sale proceeds allocated to her herein
LAW
"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. C.C. art. 1906. Under Louisiana law, the irreducible minimum for an enforceable contract consists of the following four elements: (1) contractual capacity, La. C.C. art. 1918 ; (2) consent, La. C.C. art. 1927 ; (3) cause, La. C.C. art. 1966 ; and (4) object, La. C.C. art. 1971. A "meeting of the minds" is essential to that consent. Belin v. Dugdale , 45,405 (La. App. 2 Cir. 6/30/10), 43 So.3d 272.
"A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an *1230 uncertainty concerning an obligation or other legal relationship." La. C.C. art. 3071. "A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." La. C.C. art. 3076. To be valid, a compromise must be either made in writing or recited in open court. La. C.C. art. 3072.
"The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." La. C.C. art. 2047.
Consent to a contract may be vitiated by error, fraud, or duress. La. C.C. art. 1948. "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La. C.C. Art. 1949. "Cause" is a "reason why a party obligates himself." La. C.C. art. 1967. Thus, there are three elements that a party claiming error must prove to obtain relief from the contract: (1) that he was in error; (2) the error concerned a "cause;" and (3) the other party knew or should have known of that cause.
The requirement that the party seeking enforcement of the contract have actual or constructive knowledge of the errant party's affected cause creates an objective standard for establishing consent to a contract. The mere lack of a subjective "meeting of the minds" does not prevent formation of an enforceable contract.[2]
However, even where the elements of La. C.C. Art. 1949 are proven by a party, Louisiana courts refuse to grant relief to the errant party if the error is deemed "inexcusable." Peironnet v. Matador Res. Co. , 2012-2292 (La. 6/28/13), 144 So.3d 791. The Peironnet Court stated:
We cite with approval the [following] summary...which clearly sets forth the distinction between excusable and inexcusable error:
... excusable, that is, that the party in error did not fail to take elementary precautions that would have avoided his falling into error, such as making certain that he was reasonably informed. Otherwise the error is regarded as inexcusable, in which case the party does not obtain relief...
... [P]ersonal circumstances of the party in error, such as age, experience and profession, are to be taken into account. An error made by a professional person concerning a matter within his field of expertise would no doubt be regarded as inexcusable.
Id. at 810.
The trial judge's findings of fact regarding a party's error claim are subject to manifest error review.
*1231 Davidson, Meaux, Sonnier, McElligott & Swift v. Broadhead, 94-97 (La. App. 3 Cir. 11/2/94), 649 So.2d 479 writ denied 94-2910 (La. 1/27/95), 650 So.2d 243, citing Canter v. Koehring Co. 283 So.2d 716 (La. 1973). "Where there are two permissible views of the evidence, the trial court's choice between them can virtually never be manifestly erroneous or clearly wrong." Davidson supra , citing Rosell v. ESCO , 549 So.2d 840 (La. 1989).
DISCUSSION
Blane admitted that he listened as the attorney recited the stipulation into the record. He acknowledged that his own attorney agreed to the language and Blane testified, under oath, to abide by that stipulation. Blane's consent to the entire compromise included the provision allocating the gain realized on the sale of the former community properties. These facts are clearly established.
To establish his error claim, Blane must prove: (1) he was in error regarding the effect of the provision allocating the "gain" proportionately with the division of the cash proceeds; (2) his error concerned a "cause," in that he assented to the stipulation because he thought he was only responsible for 50% of the taxes generated by the sale; and (3) Rhonda knew or should have known of such "cause." Additionally, the error must be "excusable" or relief will be denied.
Blane asserts that the parties attached different meanings to the word "gain." Specifically, he emphasizes that the stipulation recited into the record simply used the word "gain" while the corresponding provisions of the judgment used the phrase "taxable gain."
Indeed, appellant describes his alleged understanding as follows, to-wit:
It is apparent now that the attorney for Rhonda intended that the word "gain" was referring to "taxable gain." Unfortunately, Mr. Haygood thought that the meaning of this particular part of the stipulation was that he was receiving $888,650 from the gain that the parties realized by selling the property.
...
It is submitted that Mr. Haygood had no understanding and, indeed, did not agree to pay 70.60% of the taxable gain on the sale of former community properties.
Thus, Blane alleges his belief that "gain" referred only to the entire amount of the cash price received for the sale of the properties, not the tax liability. As a result, he argues that the stipulation did not allocate the tax liability resulting from the sale between the parties. Instead, he alleges that each party, by default, should bear 50% of the tax liability. Thus, he asserts that his consent to the compromise was vitiated by error. In contrast, Rhonda argues that "gain," as used in the stipulation, is synonymous with the term "profit."
The generally prevailing meaning of "gain," in the context of a sale, is the same as "profit." "Profit" is the excess of the price that the seller received over the seller's financial investment in the thing sold. Furthermore, the technical meaning of "gain" in the Internal Revenue Code is, in substance, the same.[3]
*1232 We hold that the stipulation allocated the taxable gain in the same proportion that it divided the cash proceeds. In this case, it makes no difference whether the word "gain" is given its generally prevailing meaning or its technical meaning. Use of either renders the same outcome. Allocation of the taxable gain in the same proportions as the division of the net cash proceeds was a "necessary consequence" of the provision in question.
Rhonda did not share Blane's erroneous definition of the word "gain." She clearly accorded the generally prevailing and technically correct meaning of the word "gain" to the stipulation. Blane's burden is compounded by the illogical presumption that Rhonda would agree to allow him to reap the benefit of 70.60% of the cash proceeds, but only pay 50.00% of the tax liability. In short, Rhonda intended the contract as stipulated. Therefore, Blane's error was unilateral, not mutual.
Furthermore, as a threshold matter, Blane's alleged understanding ignores the stipulation's inclusion of the word "likewise." In effect, he takes the position that the gain allocation did nothing more than restate the express division of the cash proceeds from the sale twice, first by reference in dollar amounts and second by reference in percentages. Rhonda cannot be charged with actual or constructive knowledge of such an unreasonable belief as the appellant posits. Clearly, the stipulation, as recited into the record, refers first to the cash proceeds and then to the tax liability, wherein it apportions the tax liability likewise to the cash proceeds.
Finally, Blane's alleged "error" was inexcusable. The record supports the finding that Blane is a tax professional. As of January 2015, Blane worked at the IRS as a "manager" and earned $9,110 average monthly gross income in that position. At the time of the stipulation, he had been employed by the Internal Revenue Service long enough to have a pension through that employment.[4] Thus, Blane's alleged error was directly within his field of expertise and therefore inexcusable.
Invalidation of a compromise and stipulation, voluntarily entered into on the record and under oath by parties represented by counsel, is not an action to be taken lightly by this Court. This approach fosters various laudatory policy concerns. First, parties should be encouraged to interact with counsel at all points of a proceeding, particularly before entering into a compromise and settlement. Next, the ends of judicial economy are promoted by the avoidance of needlessly re-litigating matters thought to have been concluded. Third, good faith in settlement negotiations, compromises, and stipulations is encouraged and potential manipulation of the courts and opposing parties is discouraged. Finally, parties need to be able to rely on the sworn stipulations of one another and govern their future actions based on compromises and settlements memorialized thereby.
In consideration of the above, we find that the trial court did not commit manifest error when it denied Blane's alleged "error," and instead signed the proposed judgment filed by counsel for Rhonda.
Motion for new trial
"A trial judge may deny a motion for new trial ex parte without a contradictory *1233 hearing." Johnson v. European Motors-Ali, 48,513 (La. App. 2 Cir. 11/20/13), 129 So.3d 697, citing Sonnier v. Liberty Mut. Ins. Co., 258 La. 813, 248 So.2d 299 (1971). The Sonnier Court reasoned as follows, to-wit:
... [T]o rehash a trial recently conducted to a conclusion, in the absence of a clear showing in the motion of facts or law reasonably calculated to change the outcome or reasonably believed to have denied the applicant a fair trial, would be to compound unnecessarily delays which already plague the administration of justice.
Sonnier at 303. Denial of a motion for new trial is subject to abuse of discretion review. Johnson, supra .
Blane's motion for new trial failed to clearly show law or facts that were either reasonably calculated to change the outcome or reasonably believed to have denied the applicant a fair trial. Therefore, the trial judge was within his discretion in denying the motion without a hearing.
CONCLUSION
The judgment of the trial court is AFFIRMED. All costs of this appeal are assigned to the appellant.

Blane's pleading was actually styled "Rule to Show Cause Why Consent Judgment Should Not Be Signed, Alternative Rule for Reconsideration and/or Alternative Motion For New Trial." For this opinion, the Court refers to it as Blane's "motion for new trial."

Comment (d) to La. C.C. art. 1949, states: "When only one party is in error, that is, when the error is unilateral, there is theoretically no meeting of the minds, but granting relief to the party in error will unjustly injure the interest of the other party if he is innocent of the error. Louisiana courts have often refused relief for unilateral error for this reason. Yet...they have granted relief for unilateral error in cases where the other party knew or should have known that the matter affected by the error was the reason or principal cause why the party in error made the contract..." See also Walker v. Hixson Autoplex of Monroe, LLC, 51,758 (La. App. 2 Cir. 11/29/17), 245 So.3d 1088.
"Error is mutual, or bilateral, when both parties to a contract share a wrong belief concerning a cause without which the contract would not have been entered." Saul Litvinoff, Vices of Consent, Error, Fraud, Duress and an Epilogue on Lesion , 50 La. L. Rev. 1, 34 (1989).

Internal Revenue Code Section 1001(a) provides that "[t]he gain from the sale...of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain." Section 1001(b) provides that "[t]he amount realized from the sale...of property shall be the sum of any money received plus the fair market value of... [any]... property(other than money) received." Generally, the "basis for determining gain or loss from the sale... of property...shall be the cost of such property" to the seller. Section 1011(a); section 1012(a).

In fact, that pension was partitioned as part of the subject compromise agreement. The hearing officer conference report regarding child custody and child support was filed in the record in January 2015. It states as a "finding of fact" that Blane is a manager for the IRS earning an average of $9,110 per month gross income. The trial court adopted the report.